*Nakul M. Havnurkar*
*Attorney for Plaintiffs*
*Bar #: CT31187*
*Brain Injury Rights Group*
*300 East 95th Street, Suite 130*
*New York, New York 10128*
*(646) 850-5035*

UNITED STATES DISTRICT COURT
THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| *Plaintiff(s)* | ) | |
| **APRIL HORELICK**, as Parent and | ) | |
| Natural Guardian of **C.H**. and Individually; | ) | |
| **NICOLE HOFFMAN**, as Parent and | ) | |
| Natural Guardian of **J.P**. and Individually; | ) | |
| **DOREEN PINKERTON**, as Parent and | ) | Civil Action No. |
| Natural Guardian of **M.G**. and Individually; | ) | Honorable |
| **JESSICA ROTANTE**, as Parent and | ) | |
| Natural Guardian of **H.P**. and Individually, | ) | |
| **CARA VITALE**, as Parent and | ) | PROPOSED CLASS |
| Natural Guardian of **J.V**. and **W.V**., | ) | ACTION COMPLAINT |
| and Individually and on behalf | ) | AND REQUEST FOR |
| of all others similarly situated; | ) | AUTOMATIC AND |
| | ) | PRELIMINARY |
| v. | ) | INJUNCTION |
| | ) | |
| *Defendant(s)* | ) | DEMAND FOR JURY |
| **NED LAMONT,** in his official capacity | ) | TRIAL |
| As Governor; | ) | |
| **CONNECTICUT DEPARTMENT OF** | ) | |
| **EDUCATION;** | ) | |
| **CONNECTICUT STATE BOARD OF** | ) | |
| **EDUCATION;** | ) | |
| **EAST HAVEN PUBLIC SCHOOLS;** | ) | |
| **NORTH HAVEN PUBLIC SCHOOLS;** | ) | |
| **NORWALK PUBLIC SCHOOLS;** | ) | |
| **SHELTON PUBLIC SCHOOL** | ) | |
| **DISTRICT;** | ) | |
| **STAMFORD PUBLIC SCHOOLS;** | ) | |
| **CHARLENE RUSSELL-TUCKER**, | ) | |
| in her official capacity as Acting | ) | |
| Commissioner of Education; | ) | |

**ERICA FORTI**,                                          )
in her official capacity as Superintendent;              )
**PATRICK STIRK**,                                       )
in his official capacity as Superintendent;              )
**DR. ALEXANDRA ESTRELLA**,                              )
in her official capacity as Superintendent;             )
**KENNETH SARANICH**,                                    )
in his official capacity as Superintendent;              )
and,                                                     )
**DR. TAMU LUCERO**,                                     )
in her official capacity as Superintendent.              )

_____

Plaintiffs April Horelick, Nicole Hoffman, Doreen Pinkerton, Jessica Rotante, Cara Vitale,

individually and on behalf of their special needs children (collectively referred to as "Plaintiffs"),

for their Proposed Class Action Complaint and Request for Automatic Injunction against the

Connecticut State Department of Education ("CTDOE") and the Connecticut State Board of

Education ("CTBOE") and East Haven Public Schools, North Haven Public Schools, Norwalk

Public Schools, Shelton Public School District, and Stamford Public Schools (collectively, "School

District Defendants" or "Named LEAs"), and individual Defendants Ned Lamont, Charlene

Russell-Tucker, Erica Forti, Patrick Stirk, Dr. Alexandra Estrella, Kenneth Saranich, and Dr. Tamu

Lucero, in their official capacities ("individual Defendants"), allege as follows:

## PRELIMINARY STATEMENT

This action is brought pursuant to the Individuals with Disabilities Education Act, 20 U.S.C.

§ 1401, *et seq* ("IDEA"), Conn. Agencies Reg. ("C.A.G.") § 10-76 *et seq*., Conn. Gen. Stat. § 10-

76 *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("§504"), 29 U.S.C. § 794(a); 34 C.F.R.

§ 104.4(a), Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, 42 U.S.C.

§ 12132, 28 C.F.R. § 35.104, 42 U.S.C. § 1983, the Equal Protection Clause of the Fourteenth Amendment, the Racketeer Influenced and Corrupt Organizations ("RICO") Act of 1970, 28 U.S.C. § 1961-1968 and the concomitant implementing C.A.S., C.G.S., case law, and public policy.

Plaintiffs are children with disabilities and the parents of those children, who were denied their rights under IDEA, the ADA, § 504, §1983, C.A.G., C.G.S., the Equal Protection Clause of the Fourteenth Amendment, and RICO for the 2019-2020 and 2020-2021 school years by Defendants.  Plaintiffs seek declaratory and injunctive relief on behalf of themselves and a class of similarly situated students to enjoin Defendants from violating their procedural and substantive rights under IDEA, the ADA, § 504, §1983, C.A.G., C.G.S., the Equal Protection Clause of the Fourteenth Amendment and RICO.  Specifically, Plaintiffs seek a judgment declaring that the class members' unilateral change of educational placement for more than ten days cumulatively in the 2019-2020 and 2020-2021 school years respectively triggered the IDEA's stay-put provision that required return to Plaintiffs' status quo, in-person instruction and services; and that Defendants herein violated the procedural safeguards of IDEA and discriminated against Plaintiffs under rights under IDEA, the ADA, § 504, §1983, C.A.G. and C.G.S.  Plaintiffs also seek an injunction to prevent Governor Lamont, the CTDOE and CTBOE, the named LEAs, and other similarly situated LEAs from repeating this conduct; specifically, unilaterally changing the Plaintiffs' educational placement for more than 10-days in the 2021-2022 school year and beyond, in the event of any future school closures without further Order of this Court or otherwise.

## JURISDICTION AND VENUE

1.  Jurisdiction of the United States District Court for the District of Connecticut is invoked under 20 U.S.C. § 1415(i)(2), providing for jurisdiction and a right of action in this Court for parties aggrieved under IDEA.

2.  Jurisdiction of the United States District Court for the District of Connecticut is also invoked under Section 504 of the Rehabilitation Act of 1973 ("§ 504"), 29 U.S.C. § 794(a); 34 C.F.R. § 104.4(a), and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; 28 C.F.R. § 35.104.

3.  Jurisdiction is also invoked under 42 U.S.C. § 1983.

4.  Jurisdiction is also invoked under the Racketeer Influenced and Corrupt Organizations Act of 1970 under 28 U.S.C. § 1961-1968 of RICO, specifically 28 U.S.C. § 1964.

5.  Jurisdiction is also conferred by 28 U.S.C. § 1331, providing for jurisdiction of all civil actions arising under the laws of the United States.

6.  This Court may also order declaratory and injunctive relief under 28 U.S.C. § 2201 and 2202.

7.  The Court also has pendent jurisdiction to adjudicate any state claims, which may arise out of the same facts as the federal claims asserted herein under 28 U.S.C. § 1367.

8.  Venue is proper in the United States District Court for the District of Connecticut, as authorized by 28 U.S.C. § 1391.

9.  Plaintiffs have not exhausted their administrative remedies under 20 U.S.C. § 1415(i)(2) because they fall within the exceptions to 20 U.S.C. § 1415(i)(2), including 20 § U.S.C. 1415(j).

## THE PARTIES

10.  Plaintiff C.H. was sixteen years old in March of 2020 when Norwalk Public Schools ("NPS") ceased in-person instruction and services due to the COVID-19 Pandemic, and therefore a minor during the 2019-2020 and 2020-2021 school years. **Exhibit 1**, 11/4/20 C.H. IEP.

11.  Plaintiff April Horelick is the Parent and natural guardian of C.H.

12.  Plaintiff J.P. was nine years old in March of 2020 when Shelton Public School District ("SPSD") ceased in-person instruction and services due to the COVID-19 Pandemic, and therefore a minor during the 2019-2020 and 2020-2021 school years. **Exhibit 2**, 11/12/19, 11/2/20 J.P. IEPs.

13.  Plaintiff Nicole Hoffman is the Parent and natural guardian of J.P.

14.  Plaintiff M.G. was five years old in March of 2020 when East Haven Public Schools ("EHPS") ceased in-person instruction and services due to the COVID-19 Pandemic, and therefore a minor during the 2019-2020 and 2020-2021 school years. **Exhibit 3**, 02/11/20, M.G. IEP.

15.  Plaintiff Doreen Pinkerton is the Parent and natural guardian of M.G.

16.  Plaintiff H.P. was three years old in March of 2020 when Stamford Public Schools ("SPS") ceased in-person instruction and services due to the COVID-19 Pandemic, and therefore a minor during the 2019-2020 and 2020-2021 school years. **Exhibit 4**, 9/13/19, 6/5/20 H.P. IEP.

17.  Plaintiff Jessica Rotante is the Parent and natural guardian of H.P.

18.  Plaintiff J.V. was four years old in March of 2020 when North Haven Public Schools

("NHPS") ceased in-person instruction and services due to the COVID-19 Pandemic, and therefore a minor during the 2019-2020 and 2020-2021 school years. **Exhibit 5**, 1/9/20 J.V. IEP.

19. Plaintiff Cara Vitale is the Parent of J.V.

20. Plaintiff W.V. was four years old in March of 2020 when NHPS ceased in-person instruction and services due to the COVID-19 Pandemic, and therefore a minor during the 2019-2020 and 2020-2021 school years. **Exhibit 6**, 1/9/20 W.V. IEP.

21. Plaintiff Cara Vitale is the Parent of W.V.

22. Named Plaintiffs are children with disabilities and their parents, as defined by 20 U.S.C. § 1401(3), and are entitled to receive a free and appropriate public education ("FAPE") and related services from Defendants. **Exhibits 1-6**.

23. Defendant Ned Lamont maintains an office located at the State Capitol in Hartford, Connecticut, and is responsible for the oversight and management of the State of Connecticut.

24. Defendant CTDOE's principal place of business is in Hartford, Connecticut, and has locations throughout Connecticut.

25. Defendant CTBOE's principal place of business is in Hartford, Connecticut.

26. Defendant NPS' primary place of business is Norwalk, Connecticut.

27. Defendant SPSD's primary place of business is Shelton, Connecticut.

28. Defendant EHPS' primary place of business is East Haven, Connecticut.

29. Defendant SPS' primary place of business is Stamford, Connecticut.

30. Defendant NHPS' primary place of business is North Haven, Connecticut.

31.  The CTDOE and the CTBOE are responsible for ensuring all LEAs, including NPS, SPSD, EHPS, SPS, and NHPS (collectively, the "Named LEAs"), provide a FAPE to all Connecticut students with disabilities pursuant to statutory rights arising under IDEA, the ADA, § 504, §1983, C.A.G., C.G.S., and their implementing regulations.

32.  At all relevant times, Charlene Russell-Tucker was the Acting Commissioner of Schools for the State of Connecticut.

33.  Erica Forti is the Superintendent of East Haven Public Schools.

34.  Patrick Stirk is the Superintendent of North Haven Public Schools.

35.  Dr. Alexandra Estrella is the Superintendent of Norwalk Public Schools.

36.  Kenneth Saranich is the Superintendent of Shelton Public School District.

37.  Dr. Tamu Lucero is the Superintendent of Stamford Public Schools.

38.  At all relevant times, Plaintiffs resided and continue to reside in their school districts. **Exhibits 1-6**.

39.  Student Plaintiffs are not expressly named within this complaint because of privacy provisions in IDEA as well as the Family Education Rights Privacy Act ("FERPA"), 20 U.S.C. § 1232.

40.  Defendants CTDOE and the CTBOE are and were at all material times, state educational agencies ("SEA") that manage and control the educational affairs of Connecticut public schools.

41.  The Named LEAs are local education authorities ("LEAs"), as defined by 14 U.S.C. §1401 and 34 C.F.R. § 300.28, responsible for providing Plaintiffs with a FAPE.

42. The CTDOE and the CTBOE have established policies and procedures, both written and informal, concerning the implementation of IDEA.

43. The CTDOE receives funding pursuant to IDEA, 20 U.S.C. § 1412, the ADA, and §504, and therefore must comply with the statutes' provisions.

44. The CTDOE is responsible for ensuring all Named LEAs and other similarly situated LEAs provide a FAPE to all Connecticut students with disabilities pursuant to statutory rights arising under IDEA, the ADA, §504, §1983 and their implementing C.A.S., C.G.S.

## FACTUAL ALLEGATIONS

45. Plaintiffs bring this action under IDEA, the ADA, § 504, C.A.G., C.G.S., § 1983 and RICO seeking declaratory and injunctive relief to enjoin the Defendants from violating their procedural and substantive rights under IDEA, C.A.G., C.G.S., the ADA, § 504, § 1983 and RICO.

46. The primary mechanism for ensuring the implementation of IDEA's mandate of a FAPE is the Individualized Education Plan ("IEP"), as defined by 20 U.S.C. § 1401 (14), 1414(d).

47. An IEP is a written statement, prepared for every child with a disability, that sets forth the special education and related services, supplementary aids and services, and program modifications or supports to be provided to the child, or on behalf of the child, to enable that child to achieve a comprehensive set of annual goals and short-term objectives.

48. In response to the COVID-19 Pandemic, the United States Department of Education ("U.S. DOE") published two guidance documents to school districts in March of 2020:  a supplemental fact sheet and a questions and answers document. Questions and Answers

document and a Supplemental Fact Sheet. **Exhibit 7**, March 12, 2020 Questions and Answers on Providing Services to Children with Disabilities During the Coronavirus Disease 2019 Outbreak; **Exhibit 8**, March 21, 2020, Supplemental Fact Sheet.

49.  The Fact Sheet stated: "To be clear:  ensuring compliance with the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitation Act (Section § 504), and Title II of the Americans with Disabilities Act should not prevent any school from offering educational programs through distance instruction." *Id*.

50.  The Questions and Answers sheet stated that each school would have to "make an individualized determination whether and to what extent compensatory services may be needed, consistent with applicable requirements, including to make up for any skills that may have been lost." **Exhibit 7.**

51.  The U.S. DOE did not provide any waivers of IDEA to any state.  **Exhibits 7 and 8.**

52.  On March 5, 2020, CTDOE issued guidance to school districts in the form of a planning tool. **Exhibit 9**, CT DOE COVID-19 Guidance.

53.  The "planning tool" provides little in terms of explicit guidance.   However, the "planning tool" makes one significant statement: "School districts . . . may not discriminate on the basis of disability in providing educational services, and remain responsible for the free appropriate public education of children." Id. This is, no doubt, what the federal law requires.

54.  On March 15, 2020, Governor Ned Lamont ordered that "all public-school classes will be canceled for all students effective Tuesday, March 17, 2020, until March 31, 2020." **Exhibit 10**, Lamont Executive Order No 7C.

55.   Governor Lamont issued Executive Order No. 7L on March 24, 2020, extending school closures until April 20, 2020.  **Exhibit 11**, Lamont Executive Order No. 7L.

56.   On March 26, 2020**,** Governor's Executive Order 7N suspended all State summative and alternate assessments, universal reading screening assessments, and administration of reading assessments in priority districts for the remainder of the 2019-2020 school year. **Exhibit 12**, Lamont Executive Order No 7N.

57.   Governor Lamont issued Executive Order No. 7X on April 10, 2020, extending school closures until May 20, 2020.  **Exhibit 13**, Lamont Executive Order No. 7X.

58.   Governor Lamont issued Executive Order No. 7II on May 5, 2020, extending school closures for the remainder of the 2019-2020 school year.  **Exhibit 14**, Lamont Executive Order No. 7II.

59.   In 2019, the CTDOE received approximately $140,425,382 in IDEA Part B Funds from the U.S. Department of Education.  **Exhibit 15** Annual Report of the Individual with Disabilities Education Act Part B Grants.

60.   BPS received $5,444,454 in "Flowthrough" IDEA funds for the 2019-2020 school year. *Id*.

61.   NPS received $2,257,545 in "Flowthrough" IDEA funds for the 2019-2020 school year. *Id*.

62.   SPSD received $907,650 in "Flowthrough" IDEA funds for the 2019-2020 school year. *Id*.

63.   EHPS received $662,675 in "Flowthrough" IDEA funds for the 2019-2020 school year. *Id*.

64.   SPS received $3,796,187 in "Flowthrough" IDEA funds for the 2019-2020 school year. *Id*.

65.   NHPS received $559,162 in "Flowthrough" IDEA funds for the 2019-2020 school year. *Id*.

66.   On July 1, 2020, CTDOE received a letter from the U.S. Department of Education stating that Connecticut's application for Federal Fiscal Year 2020 funds under Part B of IDEA had been approved.  **Exhibit 16**, July 1, 2020 Letter from U.S. DOE to Commissioner Miguel Cardona. The letter also notes that Connecticut had provided a certification that its application met the requirements of IDEA Part B and that Connecticut would operate its Part B program in accordance with all of the required assurances and certifications.  *Id*.

67.   In 2020, the CTDOE received approximately $144,547,867 in IDEA Part B Funds from the U.S. Department of Education.  **Exhibit 17** Fiscal Years 2020-2022 State Tables by Program for the U.S. Department of Education.

68.   On July 1, 2021, Commissioner Charlene Russell-Tucker received a letter from the U.S. Department of Education stating that Connecticut's application for Federal Fiscal Year 2021 funds under Part B of IDEA had been approved.  **Exhibit 18**, July 1, 2021 Letter from U.S. DOE to Commissioner Charlene Russell-Tucker. The letter also notes that Connecticut had provided a certification that its application met the requirements of IDEA Part B and that Connecticut would operate its Part B program in accordance with all of the required assurances and certifications.  *Id*.

69.   In 2021, the DOE received approximately $173,650,825 in IDEA Part B Funds from the U.S. Department of Education.  **Exhibit 19** Fiscal Years 2020-2022 State Tables by Program for the U.S. Department of Education.

<u>C.H.</u>

70.   Due to emotional disturbance, C.H. is eligible for special education from Norwalk Public

11

Schools ("NPS"). **Exhibit 1**, 11/4/20 C.H. IEP

71. As a result of C.H.'s emotional disturbance, C.H. has developmental impairments that adversely affect his educational abilities and performance. *Id.*

72. C.H. struggles with functional academics, behavioral issues, and social skills. *Id.*

73. Upon information and belief, C.H. was entitled to receive the following services when Norwalk Public Schools closed due to COVID-19: specialized academic instruction, accommodations, counseling services, and specialized transportation. *Id.*

74. Upon information and belief, C.H.'s IEP for the 2019-2020 school year does not state whether this mode will be in-person or virtual.

75. C.H. requires direct specialized academics and counseling services to accommodate his Disability so he can receive a FAPE. *Id.*

76. On or about March 17, 2020, Norwalk Public Schools ceased all in-person education due to the COVID-19 Pandemic.

77. As a result of the March 2020 closure of Norwalk Public Schools, Norwalk Public Schools altered C.H.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or the proper participation of parents.

78. The alterations and concomitant placement of C.H. at home receiving virtual instruction and services were procedurally defective because Norwalk Public Schools:

    a. Altered C.H.'s IEP to complete virtual instruction without prior written notice or any written notice;
    b. Altered C.H.'s IEP without the meaningful participation of his parents;
    c. Failed to reconvene an IEP meeting at a time that was mutually agreeable with

       parents before, or even soon after, changing C.H.'s placement from in-person instruction and services to home placement with virtual instruction and services;

   d.  Failed to ensure that C.H. could access a free and appropriate education on the same level as his non-disabled peers.

79.   During the 2019-2020 school year, from March 16, 2020, through approximately June 12, 2020, C.H. attended school at home with virtual instruction and services.

80.   During the 2020-2021 school year, C.H. attended school at home with virtual instruction until March of 2021, when NPS offered a hybrid option.

81.   Plaintiff April Horelick is not required to exhaust administrative due process proceedings against Defendants under 20 U.S.C. § 1415(i)(2), on behalf of C.H., because their claims fall within exceptions specified by law.

82.   Plaintiff April Horelick has neither waived nor abandoned any claims or arguments under IDEA or state law.

## **J.P.**

83.   J.P. is eligible for special education from Shelton Public School District due to specific learning disabilities/dyslexia. **Exhibit 2**, 11/2/20 J.P. IEP.

84.   As a result of J.P.'s specific learning disability/dyslexia, J.P. has global developmental impairments that adversely affect his educational performance. *Id*.

85.   J.P. struggles with functional academics. *Id.*

86.   According to J.P.'s IEP, J.P. receives small group and individual reading, math, and writing instruction services. *Id.*

87. J.P.'s IEP states that "his learning disability makes it difficult for him to access the general education curriculum, without specialized instruction and accommodations." *Id.*

88. J.P.'s IEP does not state whether this mode will be in-person or virtual.

89. J.P.'s IEP requires small group and individual reading, math, and writing instruction services to accommodate his Disability to receive a FAPE. *Id.*

90. On or about March 17, 2020, Shelton Public School District ceased all in-person education due to the COVID-19 Pandemic.

91. As a result of the March 2020 closure of Shelton Public School District, Shelton Public School District altered his IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

92. The alterations and concomitant placement of J.P. at home receiving virtual instruction and services were procedurally defective because Shelton Public School District:

   a. Altered J.P.'s IEP to complete virtual instruction without prior written notice or any written notice;

   b. Altered J.P.'s IEP without the meaningful participation of his parents;

   c. Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents before, or even soon after, changing J.P.'s placement from in-person instruction and services to home placement with virtual instruction and services;

   d. Failed to ensure that J.P. could access a free and appropriate education on the same level as his non-disabled peers.

93. During the 2019-2020 school year, from March 17, 2020, through approximately June 12, 2020, J.P. attended school at home, receiving virtual instruction and services.

94. During the 2020-2021 school year, J.P. attended school at home with virtual instruction and

services until March of 2021, when Shelton Public School District offered a hybrid option.

95.  Plaintiff Nicole Hoffman is not required to exhaust administrative due process proceedings against Defendants under 20 U.S.C. § 1415(i)(2), on behalf of J.P., because their claims fall within exceptions specified by law.

96.  Plaintiff Nicole Hoffman has neither waived nor abandoned any claims or arguments under IDEA or state law.

### M.G.

97.  M.G. is eligible for special education from East Haven Public Schools due to autism. **Exhibit 3**, 2/11/20 M.G. IEP

98.  As a result of M.G.'s autism, M.G. has global developmental impairments that adversely affect his educational performance. *Id.*

99.  M.G. struggles with functional academics, behavior, communication skills, visual-motor skills, and fine motor skills. *Id.*

100.  According to M.G.'s February 11, 2020, IEP, M.G. received specialized academic instruction, two thirty-minute speech-language therapy sessions per week, and one thirty-minute session of occupational therapy per week. *Id.*

101.  M.G. requires direct speech-language therapy, occupational therapy, academic support, and special education to accommodate his Disability to receive a FAPE. *Id.*

102.  M.G.'s IEP states that he "requires direct instruction to make progress in [expressive language and math]."

103.  On March 13, 2020, East Haven Public Schools ceased all in-person education due to the

COVID-19 Pandemic.

104. As a result of the March 13, 2020 closure of East Haven Public Schools schools, East Haven Public Schools altered M.G.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

105. The alterations and concomitant placement of M.G. at home receiving virtual instruction and services were procedurally defective because East Haven Public Schools:

   a. Altered M.G.'s IEP to complete virtual instruction without prior written notice or any written notice;

   b. Altered M.G.'s IEP without the meaningful participation of his parents;

   c. Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents before, or even soon after, changing M.G.'s placement from in-person instruction and services to home placement with virtual instruction and services;

   d. Failed to ensure that M.G. could access a free and appropriate education on the same level as his non-disabled peers.

106. During the 2019-2020 school year, from March 13, 2020, through June 11, 2020, M.G. received virtual instruction and services at home.

107. During the 2020-2021 school year, M.G. attended school at home with virtual instruction and services until March of 2021, when East Haven Public Schools offered a hybrid option.

108. Doreen Pinkerton is not required to exhaust administrative due process proceedings against Defendants under 20 U.S.C. § 1415(i)(2), on behalf of C.H., because their claims fall within exceptions specified by law.  .

109. Plaintiff Doreen Pinkerton has neither waived nor abandoned any claims or arguments under IDEA or state law.

**H.P.**

110. H.P. is eligible for special education from Stamford Public Schools (Pre-School Planning and Placement Team) due to multiple disabilities. **Exhibit 4**, 9/13/19 H.P. IEP.

111. As a result of H.P.'s disabilities, H.P. has global developmental impairments, including communication skills, pre-academics, and social interactions that adversely affect her educational abilities and performance. Her multiple disabilities significantly impact intellectual functioning and adaptive behavior. *Id*.

112. According to H.P.'s September 13, 2019, IEP, H.P. received specialized academic instruction, two thirty-minute sessions of physical therapy per week, two thirty-minute sessions of occupational therapy per week, two thirty-minute sessions of speech-language therapy per week and special transportation. *Id*.

113. H.P.'s IEP states that she has difficulties that "will impact her ability to access a general education classroom without such special education accommodations, such as the use of cues/prompts, modeling, hand over hand assistance, and visuals to support instruction." *Id*.

114. H.P.'s September 13, 2019, IEP does not state whether this mode will be in-person or virtual.

115. H.P.'s September 13, 2019, IEP requires direct speech-language therapy, physical therapy, academic support, and special education to accommodate her Disability to receive a FAPE. *Id*.

116. On March 13, 2020, Stamford Public Schools ceased all in-person education due to the COVID-19 Pandemic.

117. As a result of the March 13, 2020 closure of Stamford Public Schools, Stamford Public

Schools altered H.P.'s IEP for the 2019-2020 school year to complete virtual instruction and

services without any prior written notice and/or participation of parents.

118.  The alterations and concomitant placement of H.P. at home receiving virtual instruction and

services were procedurally defective because Stamford Public Schools:

   a.  Altered H.P.'s IEP to complete virtual instruction without prior written notice
       or any written notice;
   b.  Altered H.P.'s IEP without the meaningful participation of her parents;
   c.  Failed to reconvene an IEP meeting at a time that was mutually agreeable with
       parents before, or even soon after, changing H.P.'s placement from in-person
       instruction and services to home placement with virtual instruction and
       services;
   d.  Failed to ensure that H.P. could access a free and appropriate education on the
       same level as her non-disabled peers.

119.  During the 2019-2020 school year, from March 13, 2020, through June 12, 2020, H.P.

attended school at home, receiving virtual instruction and services.

120.  During the 2020-2021 school year, H.P. attended school at home with virtual instruction and

services until September of 2020, when Stamford Public Schools offered a hybrid option.

121.  Plaintiff Jessica Rotante is not required to exhaust administrative due process proceedings

against Defendants under 20 U.S.C. § 1415(i)(2), on behalf of C.H., because their claims fall

within exceptions specified by law.  .

122.  Plaintiff Jessica Rotante has neither waived nor abandoned any claims or arguments under

IDEA or state law.

## **J.V.**

123.  J.V. is eligible for special education from North Haven Public Schools due to developmental

delays. **Exhibit 5**, 1/9/20 J.V. IEP

124. As a result of J.V.'s developmental delays, J.V. has global developmental impairments that adversely affect his educational performance. *Id.*

125. J.V. struggles with functional academics, social skills, communication skills, and fine motor skills. *Id.*

126. According to J.V.'s January 9, 2020, IEP, J.V. received specialized academic instruction, one thirty-minute session of occupational therapy per week, extended school year services, two thirty-minute sessions of speech-language therapy, and one thirty-minute session of social skills services per week. *Id.*

127. J.V. requires occupational therapy, extended school year services, social skills service, speech-language therapy, and special education to accommodate his Disability to receive a FAPE. *Id.*

128. J.V.'s IEP states that "[his] delays in attention to task and social skills and communication impact his ability to participate in the preschool classroom/curriculum to the extent he cannot participate without support, accommodations, and modifications." *Id.*

129. On March 13, 2020, North Haven Public Schools ceased all in-person education due to the COVID-19 Pandemic.

130. As a result of the March 13, 2020 closure of North Haven Public Schools schools, North Haven Public Schools altered J.V.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

131. The alterations and concomitant placement of J.V. at home receiving virtual instruction and services were procedurally defective because North Haven Public Schools:

a. Altered J.V.'s IEP to complete virtual instruction without prior written notice or any written notice;

b. Altered J.V.'s IEP without the meaningful participation of his parents;

c. Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents before, or even soon after, changing J.V.'s placement from in-person instruction and services to home placement with virtual instruction and services;

d. Failed to ensure that J.V. could access a free and appropriate education on the same level as his non-disabled peers.

132. During the 2019-2020 school year, from March 13, 2020, through June 12, 2020, J.V. attended school at home, receiving virtual instruction and services.

133. During the 2020-2021 school year, J.V. attended school at home with virtual instruction and services.

134. Cara Vitale is not required to exhaust administrative due process proceedings against Defendants under 20 U.S.C. § 1415(i)(2), on behalf of C.H., because their claims fall within exceptions specified by law.  .

135. Plaintiff Cara Vitale has neither waived nor abandoned any claims or arguments under IDEA or state law.

## W.V.

136. W.V. is eligible for special education from North Haven Public Schools due to developmental delays. **Exhibit 6**, 1/9/20 W.V. IEP

137. As a result of W.V.'s developmental delays, W.V. has global developmental impairments that adversely affect his educational performance. *Id.*

138. W.V. struggles with functional academics, social skills, communication skills, and fine motor skills. *Id.*

139. According to W.V.'s January 9, 2020, IEP, W.V. received specialized academic instruction,

two thirty-minute sessions of occupational therapy per week, two thirty-minute sessions of speech-language therapy, extended school year services, and one thirty-minute session of social skills services per week. *Id.*

140. W.V. requires occupational therapy, speech-language therapy, extended school year services, speech-language therapy, social skills service, and special education to accommodate his Disability to receive a FAPE. *Id.*

141. W.V.'s IEP states that "[his] delays in social skills, attention to task, and following directions impacts his ability to participate in the preschool classroom/curriculum to the extent that he cannot participate without support, accommodations, and modifications." *Id.*

142. On March 13, 2020, North Haven Public Schools ceased all in-person education due to the COVID-19 Pandemic.

143. As a result of the March 13, 2020 closure of North Haven Public Schools, North Haven Public Schools altered W.V.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

144. The alterations and concomitant placement of W.V. at home receiving virtual instruction and services were procedurally defective because North Haven Public Schools:

   a. Altered W.V.'s IEP to complete virtual instruction without prior written notice or any written notice;

   b. Altered W.V.'s IEP without the meaningful participation of his parents;

   c. Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents before, or even soon after, changing W.V.'s placement from in-person instruction and services to home placement with virtual instruction and services;

   d. Failed to ensure that W.V. could access a free and appropriate education on the

same level as his non-disabled peers.

145. During the 2019-2020 school year, from March 13, 2020, through June 12, 2020, W.V. attended school at home, receiving virtual instruction and services.

146. During the 2020-2021 school year, W.V. attended school at home with virtual instruction and services.

147. Cara Vitale is not required to exhaust administrative due process proceedings against Defendants under 20 U.S.C. § 1415(i)(2), on behalf of C.H., because their claims fall within exceptions specified by law.

148. Plaintiff Cara Vitale has neither waived nor abandoned any claims or arguments under IDEA or state law.

## CLASS ACTION ALLEGATIONS

### General Class Action Allegations

149. On behalf of themselves and all similarly situated school-aged children with disabilities covered by IDEA in Connecticut and their parents, Plaintiffs bring this action to assert the claims alleged in this complaint on a common basis.  Specifically, Plaintiffs seek a judgment declaring that the Plaintiffs', the class members', unilateral change of educational placement for more than ten cumulative days in each of the 2019-2020 and 2020-2021 school years, respectively, from in-person instruction and services to virtual instruction and services violated the procedural safeguards of IDEA and discriminated against Plaintiffs under IDEA, C.A.S., C.G.S., §504, the ADA, and §1983.  Plaintiffs also seek an injunction to prevent

Governor Lamont, the CTDOE and CTBOE, the Named LEAs, and other similarly situated LEAs from engaging in similar conduct for more than ten cumulative days in the 2021-2022 school year and beyond, in the event of any future school closures.

150.  A class action is a superior means, and the only practicable means, by which Plaintiffs and unknown class members can challenge the actions the Defendants herein and other similarly situated LEAs in Connecticut, in restricting the rights of named Plaintiffs and similarly situated class members, under IDEA, C.A.S., C.G.S., the ADA, § 504, 1983 and RICO without providing them due process of law.

151.  The action is brought and may properly be maintained as a class action under Fed. R. Civ. P. 23 (a) and 23(b)(2).

152.  This action satisfies the numerosity, commonality, typicality, and adequacy requirements of Fed. R. Civ. P. 23(a), as well as the predominance and superiority requirements of Fed. R. Civ. P. 23(b)(2), where applicable.

**Fed. R. Civ. P. 23(a)(1):  Numerosity**

153.  The class is so numerous that joinder is impracticable.

154.  All the putative class members are children with disabilities under IDEA in Connecticut and their parents.

155.  The total number of individuals denied the procedural safeguards under IDEA– either in the past, current, or future – will likely number in the thousands.

**Fed. R. Civ. P. 23(a)(2):  Commonality**

156.  Common questions of law and fact exist as to all members of the classes.

23

157. All class members seek relief on the common legal question of whether the Defendants herein and other similarly situated LEAs violated IDEA, the C.A.S., C.G.S., the ADA, § 504, 1983 and RICO by altering Plaintiffs' IEPs and changing their educational placement without following the C.A.S., C.G.S., promulgated under the statutes.

158. All class members also present common factual questions regarding the Defendants herein and similarly situated LEAs' closures of schools and their concomitant educational placement.

159. All class members also present common factual questions regarding whether the CTDOE and CTBOE failed to monitor the Named LEAs appropriately and similarly situated LEAs in Connecticut and provide the LEAs (collectively) with the resources and expertise necessary to protect its disabled students' procedural safeguards guaranteed by IDEA.

160. All class members seek injunctive relief requesting that the Court:  1)  Issue a judgment declaring that the class members' pendency placement is in-person instruction and services; 2)  Issue a judgment declaring that the Defendant herein and other similarly situated LEAs unilateral change of placement for Plaintiffs from in-person instruction and services to virtual instruction and services violated the procedural safeguards of IDEA and discriminated against Plaintiffs under IDEA, the C.A.S., C.G.S., § 504, the ADA, and 1983; 3)  Issue a judgment declaring that the CTDOE failed to monitor and provide proper oversight and resources to the Defendants herein and other similarly situated LEAs during the COVID-19 pandemic as required under IDEA and the C.A.S., C.G.S.,; 4)  Order the CTDOE and the Named LEAs to comply with the procedural safeguards guaranteed by

IDEA for the 2021-2022 school year for the class members unless the U.S. DOE issues IDEA waivers; 5) Assign a Special Master for a period of one year to: a) oversee the completion of Independent Education Evaluations ("IEE") for all the class members to determine regressions and loss of competencies due to the unilateral changes to their IEPs and placements, and reconvene IEP Team meetings within thirty days of the completion of the IEEs; b) make expert recommendations to the Court regarding compensatory education or pendency payments for the class members to address any regressions and/or loss of competencies; c) ensure the expert recommendations are included in writing in the class members' IEP documents; 6) Require the Defendants herein and similarly situated LEAs, to comply with IDEA, the C.A.S., C.G.S., the ADA, § 504, and 1983 in the event of any future school closures; and 7) Assign a RICO Special Master to: a) oversee the completion of an independent audit of Defendants' expenditures of their IDEA Part B Funds from March of 2020 to the present; b) oversee the Defendants' expenditures of their IDEA Part B Funds for the 2021-2022 school year to ensure Defendants spend IDEA Part B Funds for instruction and/or services for students with disabilities under IDEA; c) ensure any IDEA Part B Funds that Defendants spent on items other than instruction and/or services for students with disabilities under IDEA from March of 2020 through the present are reimbursed to a monitored account to be spent only upon review and approval by the RICO Special Master.

### **Fed. R. Civ. P. 23(a)(3): Typicality**

161.  Plaintiffs' claims are typical of the claims of other respective members of the class.

162.  Like all class members, Plaintiffs are children with disabilities under IDEA in Connecticut

and/or their parents, who were denied the procedural due process or substantive rights provided by IDEA, the C.A.S., C.G.S., the ADA, § 504, and §1983.

163.  All members of the class claim that the Defendants herein violated their procedural and substantive due process rights provided by IDEA, the C.A.S., C.G.S., the ADA, § 504, and §1983.

164.  All members of the class seek the same injunctive relief.

165.  All members of the class, including named Plaintiffs, seek a judgment declaring that Defendants' actions were unlawful and an injunction preventing Defendants from committing such actions in the future.

166.  There is nothing distinctive about named Plaintiffs' claims for declaratory, injunctive, or pendency relief that would lead to a different result in their case than in any case involving other class members.

### Fed. R. Civ. P. 23(a)(4):  Adequacy

167.  Plaintiffs are adequate representatives of the class because their interest in the vindication of their rights is aligned with the interests of the other class members.

168.  Plaintiffs are members of the class, and their interests do not conflict with those of the other class members concerning any claims.

169.  Plaintiffs are represented by attorneys from the Brain Injury Rights Group, who have experience litigating complex civil rights matters in federal Courts and have detailed knowledge of IDEA, the C.A.S., C.G.S., § 504, the ADA, §1983, and other relevant issues.

170.  Class counsel has developed and continues to develop relationships with Plaintiffs and others

similarly situated.

**Fed. R. Civ. P. 23(b)(2):  Declaratory and Injunctive Relief Class**

171.  A class action is appropriate for declaratory and injunctive relief under Fed. R. Civ. P. 23(b)(2) because Defendants have acted on grounds that generally apply to the class – namely the unilateral change of placement in March of 2020, from in-person instruction and services to virtual instruction and services – without complying with Plaintiffs' rights under IDEA, the C.A.S., C.G.S., § 504, the ADA, and §1983.

172.  The class seeks declaratory and injunctive relief to enjoin the Defendants herein and similarly situated LEAs from denying the rights guaranteed under the IDEA, the C.A.S., C.G.S., § 504, the ADA, and §1983 to all children with disabilities.  Specifically, Plaintiffs seek a judgment declaring that during the 2019-2020 and 2020-2021 school years, the unilateral change in educational placement by Defendants for more than ten cumulative days each school year respectively, violated the procedural safeguards of IDEA and discriminated against Plaintiffs under IDEA, the C.A.S., C.G.S., §504, the ADA and §1983.  Plaintiffs also seek an injunction to prevent the Defendants herein and other similarly situated LEAs from unilaterally changing the Plaintiffs' educational placement for more than ten cumulative days in the 2021-2022 school year in the event of any future school closures.

173.  Class status is particularly appropriate because there is a risk that any individual member's claim for declaratory or injunctive relief will become moot before the litigation is resolved. There is a risk that a class member that is or was a senior during the 2019-2020 and 2020-2021 school years will lose eligibility for injunctive relief under IDEA.

**Rule 23(b)(3):  Damages Class**

174. Plaintiffs only seek nominal damages and prospective injunctive relief at this time. However, no claims for damages should be deemed waived by this lawsuit.

**CAUSES OF ACTION**

**COUNT ONE**

**SYSTEMIC VIOLATIONS OF
THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT**

**Systemic Violation 1:  Prior Written Notice**

175. Plaintiffs reiterate, repeat, and affirm each allegation set forth above as if fully set forth herein.

176. 20 U.S.C. § 1415(c)(1) requires that an LEA give prior written notice of any action proposed by the LEA regarding the provision of a Free Appropriate Public Education ("FAPE").

177. The Named LEAs did not give Plaintiffs prior written notice of their closure of schools and alteration of Plaintiffs' IEPs and school placements from in-person instruction and services to virtual instruction or services.

178. Governor Lamont and the CTDOE failed to appropriately monitor and conduct oversight of the Defendants to ensure they complied with IDEA's procedural safeguards upon the March 2020 closing of their schools.

**Systemic Violation 2: Educational Placements**

179. Under the IDEA, a school district may not alter a student's educational placement for more

than ten cumulative days in a school year without giving notice to the Parent.

180. The tenth day triggers IDEA's "stay-put" procedural safeguard, and the Student must be returned to their status quo educational placement.

181. In March 2020, Defendants made the unilateral decision to transition students from in-person instruction and services to remote instruction and services that lasted for more than ten cumulative days.

182. After that, Defendants failed to return students with disabilities to their current educational placement, as drafted in their IEP's and failed to reconvene IEP meetings to revise and develop a remote IEP with the parents.

183. 20 U.S.C. § 1414(e) states that each LEA and SEA "shall ensure that the parents of each child with a disability are members of any group that makes decisions on the educational placement of their child."

184. 20 U.S.C. § 1415(j) provides that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j).

185. The First Circuit has held that the stay-put provision entitles the parents of a disabled child to a preliminary injunction preserving the child's current placement during the pendency of an IDEA dispute unless the School District can demonstrate that the application of the traditional preliminary injunction criteria warrants a different result. 20 U.S.C. § 1415(j) obligates courts to implement pendency placement via an automatic injunction without

analyzing       the       traditional       injunction       elements.       See

Doe v. Brookline Sch. Comm., 722 F.2d 910, (1st Cir. 1983)(party seeking to modify the

status quo may obtain injunctive relief by proving that a preliminary injunction changing the

placement should issue).

186.   The Defendants herein did not ensure that the parents of each child with a disability were

included as members of an IEP Team that made decisions on the educational placement of

their children.

187.   The Defendants herein did not maintain Plaintiffs' pendency placement through in-person

instruction.

188.   Governor Lamont and CTDOE failed to appropriately monitor and conduct oversight of

named LEAs to ensure they complied with IDEA's procedural safeguards upon the March

2020 closing of its schools.

189.   Plaintiffs are entitled to all appropriate relief available under IDEA, including injunctive

relief declaring that the class members' pendency placement is in-person instruction and

requiring the Defendants to comply with IDEA in the event of any future school closures.

### Systemic Violation 3:  Failure to Reconvene IEP Meetings

190.   20 U.S.C. § 1414(d)(3)(F) states that the entire IEP Team may amend an IEP.

191.   The Named LEAs did not reconvene IEP Team Meetings to change Plaintiffs' IEPs to

provide for complete virtual instruction and services.

192.   Governor Lamont and CTDOE failed to appropriately monitor and conduct oversight of the

Named LEAs to ensure that they complied with IDEA's procedural safeguards upon the

March 2020 closing of its schools.

### Systemic Violation 4:  Discrimination based on Disability and
### Denial of Access to Educational Services

193.  Governor Lamont and CTDOE must ensure that each Named LEA takes steps to ensure that children with disabilities within its jurisdiction have access to the same educational opportunities as their non-disabled peers.  20 U.S.C. § 1412(a)(2); §1413(a)(1); 34 C.F.R. § 300.110.

194.  Defendants' systemic failure to ensure that children with disabilities had appropriate access to the same educational opportunities as their non-disabled peers is a violation of IDEA.

195.  Defendants' actions have caused Plaintiffs' damages, including regressions in skills and loss of competencies regarding the goals and objectives outlined in their IEPs.

## COUNT TWO

## VIOLATION OF THE REHABILITATION ACT, 29 U.S.C. § 794

196.  Plaintiffs reiterate, repeat, and reaffirm each allegation set forth above as if fully set forth herein.

197.  Section 504 of the Rehabilitation Act of 1973 and its implementing regulations provide, "no otherwise qualified individual with a disability in the United States … shall, solely because of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a); 34 C.F.R. § 104.4(a).

198.  Among other requirements, entities subject to Section 504 must provide equal opportunity

to qualified persons with disabilities to participate in or benefit from any aid, benefit, or service they make available.  34 C.F.R. § 104.4(b)(1)(ii).

199. Entities subject to Section 504 must avoid otherwise limiting a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service.  34 C.F.R. § 104.4(b)(1)(ii).

200. A person has a disability under Section 504 if they have a physical or mental impairment that substantially limits one or more of their major life activities. 42 U.S.C. § 12102(1).

201. Major life activities include, but are not limited to, caring for oneself, performing manual tasks, walking, standing, lifting, bending, speaking, learning, and working. 42 U.S.C. § 12102(2)(A).

202. A "qualified individual with a disability" is one who, with or without reasonable accommodations for their Disability, meets essential eligibility requirements to receive services from or participate in the programs or activities of a recipient of federal financial assistance.  29 U.S.C. § 794(a).

203. A "program or activity" includes local education agencies, public boards of education, and school systems.  29 U.S.C. § 794(b)(2)(B), 20 U.S.C. § 7801(26). A "recipient of federal financial assistance" is a public or private agency or other entity to which federal financial assistance is extended directly or through another recipient. 34 C.F.R. § 104.3(f).

204. Plaintiffs are individuals having impairments, including but not limited to specific learning disorders and autism, that affect the major life activity of learning.

205. Plaintiffs are otherwise qualified individuals with disabilities who meet essential eligibility

requirements to receive services from or participate in the programs or activities of the AAPS.  42 U.S.C. § 1213(2); 29 U.S.C. § 794(a).

206.  The CTDOE and the Named LEAs receive federal funds to comply with § 504.

207.  The CTDOE and the Named LEAs are entities subject to the non-discrimination requirements of § 504. 29 U.S.C. § 794(a); 34 C.F.R. § 104.4.

208.  The Named LEAs and other similarly situated LEAs closure of in-person instruction in March of 2020 discriminated against Plaintiffs as persons with disabilities, who necessitate in-person services including occupational therapy, speech therapy, social work services, and resource room services, by denying them equal access and otherwise limiting their access to education, programs, and services as compared to their non-disabled peers.  34 C.F.R. § 104.4(a), 104.4(b)(ii) and (iv).

209.  The Named LEAs closure of in-person instruction in March of 2020 was illegal disability-based discrimination that violated Section 504 of the Rehabilitation Act of 1973.

210.  As a proximate cause of these violations of Section 504, Plaintiffs have suffered harm as set forth above.

## **COUNT THREE**

### **VIOLATION OF TITLE II OF THE**
### **AMERICANS WITH  DISABILITIES ACT, 42 U.S.C. § 12101**

211.  Plaintiffs incorporate all prior allegations.

212.  Title II of the ADA and its implementing regulations forbid public entities, including local educational agencies, to exclude or deny people with disabilities the benefits of its services,

programs, or activities or discriminate based on Disability.  42 U.S.C. § 12132; 28 C.F.R. § 35.104.

213. Prohibited disability-based discrimination by public entities includes the failure to provide qualified individuals with disabilities an equal opportunity to participate in or benefit from aids, benefits, or services or "otherwise limit" a qualified individual with a disability in the enjoyment of any right, privilege, aid, benefit, or service. 28 C.F.R. § 35.130(b)(1)(h) & (vii).   Prohibited discrimination additionally includes the failure to make reasonable modifications as necessary to avoid discrimination against an individual based on their Disability. 28 C.F.R. § 35.130(b)(7).

214. An "individual with a disability" has a physical or mental impairment that substantially limits one or more of their major life activities.  42 U.S.C. § 12102(1).

215. Major life activities include, but are not limited to, caring for oneself, performing manual tasks, walking, standing, lifting, bending, speaking, learning, and working. 42 U.S.C. § 12102(2)(A).

216. A "qualified individual with a disability" is one who, with or without reasonable accommodations for their Disability, meets essential eligibility requirements to receive services from or participate in the programs or activities of the public entity. 42 U.S.C. § 12131(2).

217. Plaintiffs are individuals having impairments, including but not limited to specific learning disorders, that affect major life activities of learning. 42 U.S.C. § 12102(2)(A).

218. Plaintiffs are otherwise qualified individuals with disabilities who meet the essential

eligibility requirements to receive services from or participate in the programs or activities of the Named LEAs and other similarly situated LEAs. 42 U.S.C. § 12131(2).

219. Governor Lamont, the CTDOE, and the Named LEAs are public entities forbidden to discriminate based on Disability. 42 U.S.C. § 12132.

220. The Named LEAs and other similarly situated LEAs' closure of in-person instruction in March of 2020 discriminated against Plaintiffs as persons with disabilities, who necessitate in-person services including occupational therapy, speech therapy, social work services, and resource room services, by denying them equal access and otherwise limiting their access to education, programs, and services as compared to her non-disabled peers. 34 C.F.R. § 104.4(a), 104.4(b)(ii) and (iv).

221. As a proximate cause of these violations of Title II of the Americans with Disabilities Act, Plaintiffs have suffered harm as set forth above.

## COUNT FOUR

## VIOLATION OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION

## (42 U.S.C. §1983) EQUAL PROTECTION

222. Plaintiffs incorporate all prior allegations.

223. Section 1 of the Fourteenth Amendment provides:

> All persons born or naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. Amend. XIV, § 1-Citizens.

224. To provide a remedy for violations of the Fourteenth Amendment, Congress has enacted §

1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper proceeding for redress,
> except that in any action brought against a judicial officer for an act or omission
> taken in such officer's judicial capacity, injunctive relief shall not be granted
> unless a declaratory decree was violated or declaratory relief was unavailable.
> For purposes of this section, any Act of Congress applicable exclusively to the
> District of Columbia shall be considered to be a statute of the District of
> Columbia.

42 U.S.C. § 1983.

225. Defendants deprived Plaintiffs of their rights as guaranteed by the Fourteenth Amendment

to the United States Constitution, in violation of the Civil Rights Act of 1871, 42 U.S.C. §

1983, when it closed its in-person instruction in March of 2020.

226. Specifically, student Plaintiffs have been deprived of their right to equal protection under

the Fourteenth Amendment by the Defendants' acts under the color of state authority.

227. Defendant Ned Lamont's closure of schools in March of 2020 resulted in a disparate

impact on Plaintiffs due to their disabilities in violation of the ADA and §504.

228. Plaintiffs are all students with disabilities under the ADA and §504.

229. Defendants closed schools in March of 2020 in response to the COVID-19 Pandemic.

230. As a direct and proximate result thereof, Plaintiffs suffered harm, including significant

regressions in skills and loss of competencies.

231. Defendants rendered the Plaintiffs more vulnerable to harm by closing their schools.

## **COUNT FIVE**

## **VIOLATION OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION**

## **(42 U.S.C. §1983) SUBSTANTIVE DUE PROCESS**

232. Plaintiffs incorporate all prior allegations.

233. Section 1 of the Fourteenth Amendment provides:

> All persons born or naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1-Citizens.

234. To provide a remedy for violations of the Fourteenth Amendment, Congress has enacted §

1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

235.  Defendants deprived Plaintiffs of their rights as guaranteed by the Fourteenth Amendment to the United States Constitution, in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983, when it closed its in-person instruction in March of 2020.

236.  Specifically, Plaintiffs have been deprived of their right to education as guaranteed by the Connecticut Constitution.

237.  The Connecticut Constitution provides: "There shall always be free public elementary and secondary schools in the State. The general assembly shall implement this principle by appropriate legislation." CONN. CONST. art. VIII, § 1.

238.  The Defendants' actions, as alleged above, violate the Connecticut Constitution as set forth above.

239.  Defendants' closure of schools in March of 2020 violated Plaintiffs' substantive due process rights under the Connecticut Constitution.

240.  As a direct and proximate result thereof, Plaintiffs suffered harm, including significant regressions in skills and loss of competencies.

## COUNT FIVE

## VIOLATION OF C.A.G. § 10-76 *et seq* and C.G.S. § 10-76 *et seq*

241.  Plaintiffs reiterate, repeat, and reaffirm each allegation set forth above as if fully set forth herein.

242.  As described at length above, Defendants failed to provide Plaintiffs procedural safeguards upon the termination of in-person instruction in March of 2020.

243. Defendants failed to comply with the procedural requirements for prior written notice, educational placements, pendency placements, IEP Team Meetings, and equal access to instruction and services for Plaintiffs in violation of Conn. Gen. Stat. § 10-76 and Conn. Gen. Stat. § 10-76 *et seq*.

244. Defendants' actions have caused Plaintiffs damages, including regressions in skills and loss of competencies regarding the goals and objectives outlined in their IEPs.

245. All class members seek injunctive relief requesting that the Court:  1)  Issue a judgment declaring that the class members' pendency placement is in-person instruction and services; 2)  Issue a judgment declaring that the Named LEAs and other similarly situated LEAs' unilateral change of placement for Plaintiffs from in-person instruction and services to virtual instruction and services violated the procedural safeguards of the Regulations; 3) Issue a judgment declaring that the CTDOE failed to monitor and provide proper oversight and resources to the Named LEAs and other similarly situated LEAs during the COVID-19 Pandemic as required under IDEA and the Regulations; 4)  Order Governor Lamont and the CTDOE and the Named LEAs and other similarly situated LEAs to comply with the procedural safeguards guaranteed by the Regulations for the 2021-2022 school year for the class members unless the U.S. DOE issues IDEA waivers; 5) Assign a Special Master to:  a) oversee the completion of Independent Education Evaluations ("IEE") for all the class members to determine regressions and loss of competencies due to the unilateral changes to their IEPs and placements, and reconvene IEP Team meetings within thirty days of the completion of the IEEs;   b) make expert recommendations to the Court regarding

compensatory education or pendency payments for the class members to address any regressions and/or loss of competencies; c) ensure the expert recommendations are included in writing in the class members' IEP documents; 6)  Require the CTDOE and the Named LEAs and other similarly situated LEAs to comply with the Regulations in the event of any future school closures for which the U.S. DOE does not issue IDEA waivers.

## COUNT SEVEN

## VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT

## ORGANIZATIONS ACT ("RICO"), 18 U.S.C. §1962(c)

### (Against Individual Defendants)

246.  Plaintiffs incorporate by reference all preceding paragraphs.

247.  This RICO cause of action arises from a scheme by individual Defendants Ned Lamont, Charlene Russell-Tucker, Erica Forti, Patrick Stirk, Dr. Alexandra Estrella, Kenneth Saranich, and Dr. Tamu Lucero, in their official capacities ("individual Defendants"), respectively – to defraud Plaintiffs, the beneficiaries of IDEA Part B Funds, by making false assurances that the CTDOE and its LEAs complied with IDEA during the COVID-19 Pandemic. **Exhibits 15-19.**

248.  As defined in 18 U.S.C. § 1961(3) and 1964(c), each Plaintiff is a person.

249.  As defined in 18 U.S.C. § 1961 (3) and 1964 (c), each individual Defendant is a person.

### The Applicable Statutes

250.  Under 18 U.S.C. § 1962(c), it shall be unlawful for "any person employed by or associated

with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce to conduct or participate directly or indirectly in the conduct of such enterprise's affairs for a pattern of racketeering activity or collection of unlawful debt."

251. It is unlawful to violate any RICO substantive provisions, including 18 U.S.C. § 1962(c).

252. 18 U.S.C. § 1962(a) creates a private cause of action to "prevent and restrain violations" of 18 U.S.C. § 1962.

### The Enterprises

253. The enterprises, as described in 18 U.S.C. § 1961(4), are the CTDOE, BPS, NPS, SPSD, EHPS, SPS, and NHPS (collectively, the "Named LEAs").  Each enterprise is an association, in fact, consisting of individuals who function together as a continuing unit with consensual decision-making authority. Individual Defendants herein conduct the affairs of their respective enterprise in part through predicate activity which defrauds Plaintiffs through false assurances that the CTDOE, the school district Defendants, and similarly situated LEAs complied with IDEA during the COVID-19 Pandemic.

254. CTDOE assured the U.S. DOE that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 C.F.R. § 300.121." **Exhibits 15-19.**

255. CTDOE assured the U.S. DOE that "[t]he Chief Executive Officer of a State or designee of the officer shall ensure that an interagency agreement or other mechanism for interagency coordination is in effect between each public agency described in subparagraph (b) of 34 § CFR 300.154 and the State education agency, to ensure that the services described in

41

paragraph (b)(1)(i) that are needed to ensure a free appropriate public education is provided, include the provision of such services during the *pendency* of any dispute under § 300.154(a)(3)." *Id.*

256.  Each individual Defendant named herein conducted the affairs of their respective enterprise.

257.  Each enterprise operated as an ongoing organization separate and distinct from the individual Defendants.

258.  Each enterprise has a structure separate and apart from the racketeering activity that the individual Defendants engaged in.

259.  Each enterprise is a governmental entity that consists of numerous different individuals who function together with consensual decision-making authority to conduct the management and operation of the particular governmental entity.

260.  Each enterprise had longevity sufficient to permit their respective individual RICO Defendants to pursue the enterprise's purpose.

261.  The activities of each enterprise affected interstate commerce through the mail and interstate wires to and from the U.S. DOE in Washington D.C.

262.  Each enterprise affected interstate commerce through each individual Defendant's unlawful transmission of assurances of compliance with IDEA via interstate electronic mail that was fraudulently prepared and submitted in furtherance of the racketeering scheme.  Each enterprise affected interstate commerce based on each individual Defendant's collection of IDEA Part B funds wired to them through interstate banks from the U.S. DOE based on these fraudulent assurances.

**The Racketeering Violation**

263. On or about March of 2020 and continuing up through the date of the filing of this complaint, each individual RICO Defendant named herein, a person associated with or employed by their respective enterprise, did knowingly and unlawfully conduct, or participate, directly or indirectly, in each enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and 1961 (5), all in violation of 18 U.S.C. § 1962(c).

264. Each Defendant engaged in a pattern of racketeering activity by committing at least two acts of racketeering activity within 10 years of each individual act.

265. Each individual Defendant's actions violated the federal mail and wire fraud racketeering activities.

266. From March of 2020 through the present, each individual RICO Defendant knowingly and intentionally engaged in an ongoing pattern of racketeering activity under 18 U.S.C. § 1962(c) by committing the predicate acts of wire fraud and mail fraud as set forth below. The fraudulent schemes involved using the interstate wires to defraud Plaintiffs, the beneficiaries of IDEA Part B Funds, of their procedural and substantive rights.

**PREDICATE ACTS BY OFFICIALS OF EACH ENTERPRISE**

**Defendant Charlene Russell-Tucker. for the
Connecticut Department of Education ("CTDOE")**

267. Upon information and belief, Defendant Charlene Russell-Tucker, in her official capacity for CTDOE, via mail fraud through interstate commerce, made assurances to the U.S. DOE, between January of 2019 and July of 2019, that CTDOE had policies and procedures in place

as required by Part B of the Individuals with Disabilities Education Act. **Exhibit 19.**

268. In addition, upon information and belief, the CTDOE distributed a memo that noted that the LEAs provided certifications that Connecticut' application would comply with the IDEA and its federal implementing regulations and that LEAs would operate their Part B programs in accordance with all of the required assurances and certifications that are consistent with the CTDOE's policies and procedures. *Id*.

269. In 2019, the U.S. DOE gave CTDOE over $140,425,382 in IDEA Part B Funds. **Exhibit 15**.

270. Upon information and belief, Defendant Charlene Russell-Tucker., in her official capacity as Commissioner for CTDOE, via mail fraud through interstate commerce, made assurances to the U.S. DOE, between January of 2020 and July of 2020, that CTDOE had policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act. **Exhibit 16**.

271. The memo also notified LEAs that LEAs provided certifications that their application would comply with the IDEA and its federal implementing regulations. LEAs would operate its Part B program according to all of the required assurances and certifications consistent with the CTDOE's policies and procedures. *Id.*

272. In 2020, the U.S. DOE gave CTDOE over $144,547,867 in IDEA Part B Funds. **Exhibit 17.**

273. In addition, upon information and belief, Defendant Charlene Russell-Tucker, in her official capacity as Commissioner for CTDOE, made assurances, via mail fraud through interstate commerce, to the US DOE, between January of 2020 and July of 2020, that CTDOE, BPS,

NPS, SPSD, EHPS, SPS, and NHPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibit 16**.

274. In addition, upon information and belief, Defendant Charlene Russell-Tucker, in her official capacity as Commissioner for CTDOE, made assurances, via mail fraud through interstate commerce, to the U.S. DOE, between January of 2020 and July of 2020, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 C.F.R. § 300.121." *See id*.

275. In addition, upon information and belief, Defendant Charlene Russell-Tucker, in her official capacity as Commissioner for CTDOE, assured the U.S. DOE, via mail fraud through interstate commerce, between January of 2020 and July of 2020, that "[t]he Chief Executive Officer of a State or designee of the officer shall ensure that an interagency agreement or other mechanism for interagency coordination is in effect between each public agency described in subparagraph (b) of 34 § CFR 300.154 and the State education agency, to ensure that the services described in paragraph (b)(1)(i) that are needed to ensure a free appropriate public education is provided, include the provision of such services during the *pendency* of any dispute under § 300.154(a)(3)." *Id*.

276. Upon information and belief, CTDOE collected the IDEA Part B funds from the U.S. DOE via wire fraud through interstate commerce.

277. Upon information and belief, CTDOE received IDEA Part B funds from the U.S. DOE and then distributed them to the CTDOE, NPS, SPSD, EHPS, SPS, and NHPS by wire.

278. Upon information and belief, CTDOE, NPS, SPSD, EHPS, SPS, and NHPS received the IDEA Part B funds from the CTDOE and used them unlawfully.

279. In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendants used interstate wires to defraud Plaintiffs of their rights under IDEA. The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and in violation of 18 U.S.C. § 1343.

280. Upon information and belief, these interstate wires were collected by Defendants in the years 2019, 2020 and are continuing to be collected to further his objective to obtain federal funds under the false pretense that The CTDOE protected plaintiffs' procedural and substantive rights under IDEA during the closure of CTDOE, NPS, SPSD, EHPS, SPS, and NHPS.

281. Each use of wire communications in connection with the scheme to defraud constitutes the offense of wire fraud as prohibited by 18 U.S.C. § 1343.

282. Contrary to the individual Defendants' assurances, CTDOE did not give Plaintiffs prior written notice of the Named LEAs' closure of schools and alteration of Plaintiffs' IEPs and school placements from in-person instruction and services to virtual instruction or services during the COVID-19 Pandemic.

283. Contrary to the individual Defendants' assurances, CTDOE did not ensure that the parents of each child with a disability were included as members of an IEP Team that made decisions on the educational placement of their children during the COVID-19 Pandemic.

284. Contrary to the individual Defendants' assurances, CTDOE did not maintain Plaintiffs'

pendency placement through in-person instruction during the COVID-19 Pandemic.

285. Contrary to the individual Defendants' assurances, the CTDOE did not reconvene IEP Team Meetings to change Plaintiffs' IEPs to provide for complete virtual instruction and services during the COVID-19 Pandemic.

**Defendant Erica Forti for East Haven Public Schools ("EHPS")**

286. Upon information and belief, Erica Forti, in her official capacity as current Superintendent of EHPS, assured the CTDOE, between January of 2019 and July of 2019, that EHPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibit 19**.

287. In addition, upon information and belief, Erica Forti, in her official capacity as current Superintendent of EHPS, assured the CTDOE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 C.F.R. § 300.121." *Id.*

288. In addition, upon information and belief, Erica Forti, in her official capacity as current Superintendent of EHPS, made assurances to the CTDOE, between January of 2020 and July of 2020, that EHPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibit 16**.

289. In addition, upon information and belief, Erica Forti, in her official capacity as current Superintendent of EHPS, made assurances to the CTDOE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural

47

safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 C.F.R. § 300.121." *See id*.

290. In furtherance of her scheme to defraud, and with the purpose of executing her scheme to defraud, Defendant Forti used interstate wires to defraud Plaintiffs of their rights under IDEA. The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and violate 18 U.S.C. § 1343.

291. Defendant Forti used the interstate wires in 2019 and 2020 and continues to use them to further her objective to obtain federal funds under the false pretense that EHPS protected plaintiffs' procedural and substantive rights under IDEA during its closure.

**Defendant Patrick Stirk for North Haven Public Schools ("NHPS")**

292. Upon information and belief, Patrick Stirk, in his official capacity as current Superintendent of NHPS, assured the CTDOE, between January of 2019 and July of 2019, that NHPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibit 19**.

293. In addition, upon information and belief, Patrick Stirk, in his official capacity as current Superintendent of NHPS, assured the CTDOE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 C.F.R. § 300.121." *Id*.

294. In addition, upon information and belief, Patrick Stirk, in his official capacity as current

Superintendent of NHPS, made assurances to the CTDOE, between January of 2020 and July of 2020, that NHPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibit 16**.

295. In addition, upon information and belief, Patrick Stirk, in his official capacity as current Superintendent of NHPS, made assurances to the CTDOE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 C.F.R. § 300.121." *See id*.

296. In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Stirk used interstate wires to defraud Plaintiffs of their rights under IDEA.  The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and violate 18 U.S.C. § 1343.

297. Defendant Stirk used the interstate wires in 2019 and 2020 and continues to use them to further his objective to obtain federal funds under the false pretense that NHPS protected plaintiffs' procedural and substantive rights under IDEA during its closure.

**Defendant Dr. Alexandra Estrella for Norwalk Public Schools ("NPS")**

298. Upon information and belief, Dr. Alexandra Estrella, in her official capacity as current Superintendent of NPS, assured the CTDOE, between January of 2019 and July of 2019, that NPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibit 19**.

299. In addition, upon information and belief, Dr. Alexandra Estrella, in her official capacity as current Superintendent of NPS, assured the CTDOE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 C.F.R. § 300.121." *Id.*

300. In addition, upon information and belief, Dr. Alexandra Estrella, in her official capacity as current Superintendent of NPS, made assurances to the CTDOE, between January of 2020 and July of 2020, that NPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibit 16**.

301. In addition, upon information and belief, Dr. Alexandra Estrella, in her official capacity as current Superintendent of NPS, made assurances to the CTDOE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 C.F.R. § 300.121." *See id.*

302. In furtherance of his scheme to defraud and to execute his scheme to defraud, Defendant Estrella used interstate wires to defraud Plaintiffs of their rights under IDEA.  The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and violate 18 U.S.C. § 1343.

303. Defendant Estrella used the interstate wires in 2019 and 2020 and continues to use them to further his objective to obtain federal funds under the false pretense that NPS protected

plaintiffs' procedural and substantive rights under IDEA during its closure.

**Defendant Kenneth Saranich for Shelton Public School District ("SPSD")**

304. Upon information and belief, Kenneth Saranich, in his official capacity as current Superintendent of SPSD, assured the CTDOE, between January of 2019 and July of 2019, that SPSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibit 19**.

305. In addition, upon information and belief, Kenneth Saranich, in his official capacity as current Superintendent of SPSD, assured the CTDOE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 C.F.R. § 300.121." *Id*.

306. In addition, upon information and belief, Kenneth Saranich, in his official capacity as current Superintendent of SPSD, made assurances to the CTDOE, between January of 2020 and July of 2020, that SPSD had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibit 16**.

307. In addition, upon information and belief, Kenneth Saranich, in his official capacity as current Superintendent of SPSD, made assurances to the CTDOE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 C.F.R. § 300.121." *See id*.

308. In furtherance of his scheme to defraud and to execute his scheme to defraud, Defendant

Saranich used interstate wires to defraud Plaintiffs of their rights under IDEA. The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and violate 18 U.S.C. § 1343. Defendant Saranich used the interstate wires in 2019 and 2020 and continues to use them to further his objective to obtain federal funds under the false pretense that SPSD protected Plaintiffs' procedural and substantive rights under IDEA during its closure.

### Defendant Dr. Tamu Lucero for Stamford Public Schools ("SPS")

309. Upon information and belief, Dr. Tamu Lucero, in her official capacity as current Superintendent of SPS, assured the CTDOE, between January of 2019 and July of 2019, that SPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibit 19**.

310. In addition, upon information and belief, Dr. Tamu Lucero, in her official capacity as current Superintendent of SPS, assured the CTDOE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 C.F.R. § 300.121." *Id*.

311. In addition, upon information and belief, Dr. Tamu Lucero, in her official capacity as current Superintendent of SPS, made assurances to the CTDOE, between January of 2020 and July of 2020, that SPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibit 16**.

312. In addition, upon information and belief, Dr. Tamu Lucero, in her official capacity as current

Superintendent of SPS, made assurances to the CTDOE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 C.F.R. § 300.121." *See id*.

313. In furtherance of his scheme to defraud and to execute his scheme to defraud, Defendant Lucero used interstate wires to defraud Plaintiffs of their rights under IDEA. The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and violate 18 U.S.C. § 1343. Defendant Lucero used the interstate wires in 2019 and 2020 and continues to use them to further his objective to obtain federal funds under the false pretense that SPS protected Plaintiffs' procedural and substantive rights under IDEA during its closure.

## The pattern of Racketeering Activity

314. The course of conduct engaged in by each individual RICO Defendant constituted both "continuity" and "relatedness" of the racketeering activity, thereby constituting a pattern of racketeering activity, as that term is defined in 18 U.S.C. § 1961(5). **Exhibits 15-19**.

315. The individual Defendants' predicate acts have "similar purposes, results, participants, or methods of commission or are related to the affairs of the Enterprise." *See id*.

316. By allowing Defendants' conduct to continue, Defendant Governor Ned Lamont remained complicit in the scheme.

317. All predicate acts had the same purpose of defrauding Plaintiffs of IDEA Funds.

318. The continuity of the pattern of racketeering activity constitutes closed-ended continuity as

it occurred over a substantial period, from about March 2020 to the present, as Defendants herein have all reapplied for IDEA funding for the 2021 school year.

319. There is a threat of continued activity as each individual Defendant has repeatedly engaged in illegal and illicit activities. Engaging in the pattern of racketeering as set forth herein is the regular way the individual Defendants conduct the affairs of their respective associated association, in fact, enterprise. Because each enterprise has been in existence for many years, and the seeking of federal funding by these individual Defendants on behalf of their associated association in fact enterprise will continue indefinitely, each Defendant, through the operation of their associated association in fact enterprise, remains a threat to others and their racketeering activity meets the open-ended continuity test.

## INJURY

320. As a direct and proximate result of the individual Defendants' predicate acts in furtherance of violating 18 U.S.C. § 1962(a), Plaintiffs have been and are continuing to be deprived of their rights under IDEA, as set forth more fully above.

321. As a direct and proximate result thereof, Plaintiffs suffered harm, including significant regressions in skills and loss of competencies.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

1. Assert jurisdiction over this matter;

2. Certify this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(2).

3. Issue a judgment declaring that the class members' status quo, pendency placement is in-person instruction and services;

4.    Issue a judgment declaring that the unilateral change in the educational placement of the Plaintiffs for more than ten cumulative days in the 2019-2020 and 2020-2021 school years, respectively, violated the procedural safeguards and rights of Plaintiffs under IDEA and discriminated against Plaintiffs under IDEA, the Regulations, the ADA, § 504 and §1983.

5.    Issue a judgment declaring that the CTDOE failed to monitor and provide proper oversight and resources to the Named LEAs and other similarly situated LEAs during the COVID-19 Pandemic as required under IDEA and the Regulations;

6.    Order the Defendants herein to comply with the procedural safeguards guaranteed by IDEA for the 2021-2022 school year for the class members, thereby enjoining Defendants and other similarly situated LEAs from unilaterally changing the Plaintiffs' educational placement for more than ten cumulative days in the 2021-2022 school year, and in subsequent school years, in the event of any future school closures;

7.    Assign a Special Master to a) oversee the completion of Independent Education Evaluations ("IEE") for all the class members to determine regressions and loss of competencies due to the unilateral changes to their IEPs and placements, and reconvene IEP Team meetings within thirty days of the completion of the IEEs; b) make expert recommendations to the Court regarding compensatory education or pendency payments for the class members to address any regressions and/or loss of competencies, and c) ensure the expert recommendations are included in writing in the class members' IEP documents;

8.    Require the Defendants herein to comply with IDEA, the Regulations, the ADA, § 504 and §1983 in the event of any future school closures;

9.    Assign a RICO Assign a Special Master to a) oversee the completion of Independent Education Evaluations ("IEE") for all the class members to determine regressions and loss of competencies due to the unilateral changes to their IEPs and placements, and reconvene IEP Team meetings within thirty days of the completion of the IEEs;  b) make expert recommendations to the Court regarding compensatory education or pendency payments for the class members to address any regressions and/or loss of competencies, and c) ensure the expert recommendations are included in writing in the class members' IEP documents;

10.    Grant Plaintiffs, all class members, an award of compensatory education as appropriate; grant Plaintiffs, all class members, and award of compensatory education in the form of an additional year of education, or more, for each school year, and/or portion thereof, Plaintiffs received remote or hybrid education; grant Plaintiffs, all class members, an award of compensatory education, as pendency, in the form of a pendency voucher, or pendency fund, to address

and/or compensate Plaintiffs', class members', regressions and/or loss of competencies;

11.    Declare Plaintiffs to be the "substantially prevailing party" (for purposes of IDEA's fee-shifting provision);

12.    Award Plaintiffs, all class members, nominal damages;

13.    Grant leave to Plaintiffs to submit a statutory fee application;

14.    Allow Plaintiffs to seek punitive damages for the claims herein, except for the RICO related claims, to the extent that such damages are not barred by federal and State law;

15.    Direct Defendants to pay for the costs and expenses for maintaining this action, including reasonable attorneys' fees under 20 U.S.C. § 1415(i)(3)(B);

16.    Award attorneys' fees under the Rehabilitation Act, the Americans with Disabilities Act, and 42 U.S.C. § 1988;

17.    Retain jurisdiction over this action until this Court is satisfied that the systemic violations of the laws and regulations complained of herein have been rectified; and

18.    Grant such other or further relief that the Court may deem just and proper.


Respectfully submitted,

*/s/Nakul M. Havnurkar*
Nakul M. Havnurkar (CT 31187)
Attorney for Plaintiffs
Brain Injury Rights Group
300 East 95th Street, Suite 130
New York, NY 10128
nakul@pabilaw.org

**EXHIBITS**

| 1 | C.H. IEP 11.4.2020 |
|---|---|
| 2 | J.P. IEP 11.2.2020 |
| 3 | M.G. IEP 2.11.2020 |
| 4 | H.P. IEP 9.13.19 |
| 5 | J.V. IEP 1.9.20 |
| 6 | W.V. IEP 1.9.20 |
| 7 | 3.12.20 USDOE Q&A on Providing Services to Children with Disabilities During COVID-19 |
| 8 | 3.21.20 Supplemental Fact Sheet |
| 9 | 3.5.20 CTDOE COVID Guidance |
| 10 | 3.15.20 Lamont Order 7C |
| 11 | 4.20.20 Lamont Order 7L |
| 12 | 3.26.20 Lamont Order 7N |
| 13 | 4.10.20 Lamont Order 7X |
| 14 | 5.5.20 Lamont Order 7II |
| 15 | Annual Report of the Individual with Disabilities Education Act Part B Grants |
| 16 | July 1, 2020 Letter from U.S. DOE to CTDOE |
| 17 | FY 20-22 State Tables by Program U.S. DOE |
| 18 | July 1, 2021 Letter from U.S.DOE to CTDOE |
| 19 | July 1, 2019 Letter from U.S.DOE to CTDOE |