## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| APRIL HORELICK, as Parent and Natural Guardian of C.H. and Individually; NICOLE HOFFMAN, as Parent and Natural Guardian of J.P. and Individually; DOREEN PINKERTON, as Parent and Natural Guardian of M.G. and Individually; JESSICA ROTANTE, as Parent and Natural Guardian of H.P. and Individually, CARA VITALE, as Parent and Natural Guardian of J.V. and W.V., and Individually and on behalf of all others similarly situated,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>NED LAMONT, in his official capacity As Governor; CONNECTICUT DEPARTMENT OF EDUCATION; CONNECTICUT STATE BOARD OF EDUCATION; EAST HAVEN PUBLIC SCHOOLS; NORTH HAVEN PUBLIC SCHOOLS; NORWALK PUBLIC SCHOOLS; SHELTON PUBLIC SCHOOL DISTRICT; STAMFORD PUBLIC SCHOOLS; CHARLENE RUSSELL-TUCKER, in her official capacity as Acting Commissioner of Education, ERICA FORTI, in her official capacity as Superintendent; PATRICK STIRK, in his official capacity as Superintendent; DR. ALEXANDRA ESTRELLA, in her official capacity as Superintendent; KENNETH SARANICH, in his official capacity as Superintendent; and, DR. TAMU LUCERO, in her official capacity as Superintendent,<br><br>    *Defendants*. | No. 3:21-cv-1431-MPS |

## <u>RULING ON DEFENDANTS' MOTIONS TO DISMISS</u>

This case arises out of Connecticut's closure of public schools to in-person instruction as a result of the COVID-19 pandemic.  Plaintiffs, who are students with disabilities and their parents, argue that these closures violated their rights under the Individuals with Disabilities Education Act ("the IDEA") and other federal and state laws.  Defendants, who are various state and local officials sued in their official capacities, the Connecticut Department of Education, the

1

Connecticut State Board of Education, and several local public school districts, now move to dismiss Plaintiffs' Complaint. They argue that this Court lacks subject matter jurisdiction because: (1) Plaintiffs lack standing to bring their claims; (2) Plaintiffs failed to exhaust their administrative remedies under the IDEA; and (3) Eleventh Amendment immunity bars Plaintiffs' claims. They also argue that the Complaint fails to state a claim upon which relief can be granted. For the reasons set forth below, I agree with Defendants that this Court lacks subject matter jurisdiction, and I therefore dismiss this case.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.   IDEA Framework

The IDEA aims to provide students with disabilities with a "free appropriate public education," commonly referred to as a "FAPE." 20 U.S.C. § 1400(d)(1)(A). "[A] FAPE comprises 'special education and related services'—both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction." *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 158 (2017) (quoting 20 U.S.C §§ 1401 (9), (26), (29)). To aide in the provision of FAPEs, the IDEA offers states federal funding in exchange for a commitment to abide by its requirements. 20 U.S.C. § 1415(a). Connecticut has accepted IDEA funding for all times relevant here. ECF No. 1 at ¶¶ 59–69.

Under the IDEA, an "individualized education program, called an IEP for short, serves as the primary vehicle for providing each child with the promised FAPE." *Fry*, 580 U.S. at 158 (internal quotation marks omitted). "The IEP spells out a personalized plan to meet all of the child's educational needs." *Id.* (internal quotation marks omitted).

The IDEA establishes procedural safeguards, which give students and their parents certain protections whenever there is a change or proposed change to a student's IEP. 20 U.S.C.

§ 1415.  These safeguards include procedures for the resolution of any disputes between parents

and schools concerning a student's IEP.  Generally, the dispute resolution process is as follows:

> To begin, a dissatisfied parent may file a complaint as to any matter concerning the provision of a FAPE with the local or state educational agency (as state law provides).  *See* § 1415(b)(6).  That pleading generally triggers a "[p]reliminary meeting" involving the contending parties, § 1415(f)(1)(B)(i); at their option, the parties may instead (or also) pursue a full-fledged mediation process, *see* § 1415(e).  Assuming their impasse continues, the matter proceeds to a "due process hearing" before an impartial hearing officer.  § 1415(f)(1)(A); *see* § 1415(f)(3)(A)(i).  Any decision of the officer granting substantive relief must be "based on a determination of whether the child received a [FAPE]."  § 1415(f)(3)(E)(i).  If the hearing is initially conducted at the local level, the ruling is appealable to the state agency. *See* § 1415(g).  Finally, a parent unhappy with the outcome of the administrative process may seek judicial review by filing a civil action in state or federal court. *See* § 1415(i)(2)(A).

*Fry*, 580 U.S. at 159.

### B.  COVID-19 and School Closures

On March 15, 2020, in response to the COVID-19 pandemic, Governor Ned Lamont

ordered all public schools to close to in-person instruction from March 17, 2020 to March 31,

2020.  ECF No. 1 at ¶ 54; ECF No. 1-11.  Government Lamont subsequently issued a series of

orders that extended the closures through the remainder of the 2019-2020 school year.  ECF No.

1 at ¶¶ 55–58; ECF No. 1-12; ECF No. 1-13; ECF No. 1-14.  Prior to the start of the 2020-2021

school year, Connecticut schools transitioned to remote instruction, *see* ECF No. 1 at ¶¶ 77–80,

91–94, 104–07, 117–20, 130–33, 143–46, which continued until various points in the 2020-2021

school year when school districts began opening their schools to hybrid instruction, *see id.* at ¶¶

80, 94, 107, 120.

Around the time Governor Lamont ordered schools to close, the United States

Department of Education ("USDOE") published two guidance documents concerning the effects

of COVID-19 on providing education to students with disabilities.  The first was a Questions and

Answers document.  ECF No. 1-7.  This document stated that IEPs for students with disabilities could include "distance learning plans" such as "the provision of online or virtual instruction, instructional telephone calls, and other curriculum-based instructional activities . . . ."  *Id.* at 5.  It also stated that "[i]f [a local education agency ("LEA")] closes its schools to slow or stop the spread of COVID-19, and does not provide any educational services to the general student population, then an LEA would not be required to provide services to students with disabilities during that same period of time."  *Id.* at 2.  The second piece of guidance was a Supplemental Fact Sheet concerning the risks of providing services to students with disabilities during the pandemic.  ECF No. 1-8.  The Supplemental Fact Sheet advised schools that "**ensuring compliance with the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitation Act (Section 504), and Title II of the Americans with Disabilities Act should not prevent any school from offering educational programs through distance instruction.**"  *Id.* at 1 (emphasis in original) (internal footnotes omitted).  The Fact Sheet explained that it is "simply not true" that "federal disability law presents insurmountable barriers to remote education."  *Id.* (emphasis in original).  The Fact Sheet further stated that "[i]n this unique and ever-changing environment, [USDOE] recognize[s] that these exceptional circumstances may affect how all educational and related services and supports are provided, and the Department will offer flexibility where possible."  *Id.*

### C.   Procedural History

Plaintiffs, who are students with disabilities and their parents, filed this case on October 29, 2021.  ECF No. 1 at 3.  They bring claims against Governor Lamont and Acting Commissioner of Education Charlene Russell Tucker in their official capacities, the Connecticut Department of Education, and the Connecticut State Board of Education (collectively, the "State

Defendants"), as well as several local public school districts[1] and their superintendents in their official capacities (collectively, the "District Defendants"). *Id.* at 1. Plaintiffs allege that Connecticut's COVID-19 school closures violated their rights under the IDEA and Connecticut's corresponding implementing statutes, Title II of the Americans with Disabilities Act ("ADA"), § 504 of the Rehabilitation Act of 1973, the Fourteenth Amendment, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *Id.* at 3, ¶¶ 175–319. Plaintiffs seek injunctive and declaratory relief as well as nominal damages on behalf of themselves and a class of similarly situated Connecticut students and their parents. *Id.* at 3, ¶ 174, 54–56. The requested declaratory relief includes "a judgment declaring that the unilateral change in the educational placement of the Plaintiffs for more than ten cumulative days in the 2019-2020 and 2020-2021 school years, respectively, violated the procedural safeguards and rights of Plaintiffs under IDEA and discriminated against Plaintiffs under IDEA, the Regulations, the ADA, § 504 and § 1983"; and the requested injunctive relief includes an injunction "[r]equir[ing] the Defendants . . . to comply with IDEA, the Regulations, the ADA, § 504 and § 1983 in the event of any future school closures." *Id.* at 55.

Defendants jointly filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under 12(b)(6). ECF No. 43. With respect to jurisdiction, as noted above, they argue that this Court lacks jurisdiction because: (1) Plaintiffs

---

[1] Plaintiffs purport to sue several "school districts," but under Connecticut law, school districts are organizational units rather than legal entities. *See Cromwell Property Owners Ass'n v. Toffolon*, 495 F. Supp. 915, 921 (D. Conn. 1979) ("Delineation of school districts is simply the means by which the State arranges for the provision of public education."). By contrast, the Connecticut General Assembly has delegated to local boards of education the responsibilities of "maintain[ing] good public elementary and secondary schools, implement[ing] the educational interests of the state, . . . and provid[ing] such other education activities as in its judgment will best serve the interests of the school district . . . ." Conn. Gen. Stat. § 10-220; *see also* § 10-240 ("Each town shall through its board of education maintain the control of all the public schools within its limits . . . ."). These local school boards "have independent legal existence and are capable of suing and being sued." *Hernandez v. Enfield Bd. of Educ.*, No. 3:19-cv-1907, 2020 WL 4816457, at *4 (D. Conn. Aug. 19, 2020). Nevertheless, for the purposes of this ruling, I will use the nomenclature used by Plaintiffs.

lack standing; (2) Plaintiffs failed to exhaust their administrative remedies under the IDEA; and (3) Defendants are immune to Plaintiffs' claims under the Eleventh Amendment. *Id.* at 8–20. District Defendants filed a separate motion to dismiss, which attaches settlement agreements between various Plaintiffs and District Defendants and argues that these Plaintiffs' claims are barred by the agreements. ECF No. 44.

Plaintiffs responses to these motions argue, with respect to standing, that the risk of future school closures constitutes an injury in fact and that their request for nominal damages satisfies the redressability element of standing. ECF No. 46 at 17, 20–22. In terms of exhaustion, Plaintiffs argue that their claims fall under an exception to the exhaustion requirement. *Id.* at 7–11; ECF No. 45 at 11–15. And regarding the Eleventh Amendment, Plaintiffs argue that Congress abrogated Eleventh Amendment immunity for states that accept IDEA-related funds from the federal government. ECF No. 46 at 23–24. Plaintiffs also argue that all of their claims were plausibly pled under Rule 12(b)(6). *Id.* at 24–38.

I address the jurisdictional arguments below. Because I conclude that the Court lacks subject matter jurisdiction, I do not address the Rule 12(b)(6) motion.

## II.    LEGAL STANDARD

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)." "The burden of proving jurisdiction is on the party asserting it." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994). When considering a motion to dismiss for lack of subject matter jurisdiction, I must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Jaghory v. New York State Dept. of Educ.*, 131 F.3d 326, 329

(2d Cir. 1997).  In addition, I "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue . . . ."  *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.38 107, 110 (2d Cir. 2004).

## III.   DISCUSSION

### A.   Standing

Defendants argue that Plaintiffs lack standing to bring their claims.  "A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if . . .the plaintiff lacks constitutional standing to bring the action."  *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 416-17 (2d Cir. 2015).  A plaintiff must establish standing for each claim and for each form of relief sought.  *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).  To demonstrate standing, a plaintiff must "clearly" allege that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  Defendants argue that Plaintiffs have not adequately alleged an injury in fact to support their claims for injunctive and declaratory relief because Defendants' allegedly illegal conduct has ceased and the threat of future injury is speculative.[2]  ECF No. 43 at 14–16.  I agree.

In a suit for injunctive or declaratory relief, past injuries alone are not sufficient to establish standing because a court's ruling cannot redress the injuries suffered.  "[T]he Supreme

---

[2] Defendants also briefly challenge the traceability (or causation) element of standing, arguing that Plaintiffs lack standing to bring claims against school districts other than their own "because those districts were not obliged to provide Students from outside their district with a free appropriate education."  ECF No. 43 at 14.  This much, of course, is true.  As the court noted in a similar case, "each individual child and his/her parents has standing to bring a claim only against that child's school district."  *J.T. v. de Blasio*, 500 F. Supp. 3d 137, 174 (S.D.N.Y. 2020), *aff'd in part, appeal dismissed in part sub nom. K.M. v. Adams*, No. 20-4128, 2022 WL 4352040 (2d Cir. Aug. 31, 2022).  But this restriction means only that each Plaintiff's claim will be limited to the school district whose school that Plaintiff attends (or that plaintiff's child attends).  It does not affect the Court's subject matter jurisdiction over the lawsuit.

Court has made clear that 'allegations of possible future injury' or even an 'objectively reasonable likelihood' of future injury are insufficient to confer standing." *McMorris v. Carlos Lopez & Assocs.*, LLC, 995 F.3d 295, 300 (2d Cir. 2021) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409–10 (2013)).  Rather, the threat of future injury can establish standing only "if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks omitted).

Plaintiffs' factual allegations are backward-looking and allege no future injury, let alone a "certainly impending" one.  ECF No. 1 at ¶¶ 54–58 (describing Governor Lamont's school closure orders in 2020); ¶¶ 59–69 (describing Defendants' receipt of federal funds from USDOE); ¶¶ 80, 90–94, 104–07, 116–20. 129–33, 143–46 (describing how the closing of individual Defendant school districts and transitions to remote and, later, hybrid learning affected each Plaintiff); *see also id.* at ¶¶ 177–78 (alleging that Defendant school districts "did not give Plaintiffs prior written notice" of school closures and that Governor Lamont failed to "appropriately monitor and conduct oversight of" local school districts).  Plaintiffs nonetheless argue that "the ongoing presence of all COVID-19 variants, but especially Omicron and Delta variants, makes it highly likely, if not certain, that schools will close again and Plaintiffs will again be denied their in-person education."  ECF No. 46 at 17.  But that position has been repeatedly rejected by recent caselaw in this Circuit.  *See Connecticut Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 446 (2d Cir. 2021) (vacating preliminary injunction partly on mootness grounds: "[p]articularly in view of the mitigation measures that have become available to combat the spread of COVID-19, and the providential infrequency of pandemics," future pandemic-related restrictions in applying for firearms were speculative); *Dark Storm Indus. LLC v. Hochul*,

No. 20-2725-CV, 2021 WL 4538640, at *1 (2d Cir. Oct. 5, 2021) (holding that the threat of

future COVID-19 restrictions on firearm retailers was speculative); *Nat'l Rifle Ass'n of Am. v.*

*Hochul*, No. 20-3187-CV, 2021 WL 5313713, at *1 (2d Cir. Nov. 16, 2021) (same); *Doe v.*

*Franklin Square Union Free Sch. Dist.*, No. 2:21-CV-5012, 2023 WL 2632512, at *2 (E.D.N.Y.

Mar. 24, 2023) (holding, in a case involving school mask mandates, that the court would "join[]

its peers in this Circuit which consistently have found that the threat of COVID-19 measures

being reimposed is merely speculative"); *Mongielo v. Hochul*, No. 22-CV-116, 2023 WL

2307887, at *9 (W.D.N.Y. Mar. 1, 2023) ("[G]iven the current state of the pandemic . . . there is

no reasonable threat—let alone a constant threat—that the [school mask] mandate will be

reimposed.").  In addition, other Circuits have found in analogous cases brought by the same

Plaintiffs' counsel that the fear of future school closures was not sufficient to establish standing.

*See Roe v. Healey*, No. 22-1740, 2023 WL 5199870, at *5 (1st Cir. Aug. 14, 2023) (holding that

plaintiffs' standing theories were "too attenuated to support a claim that future injury is certainly

impending, or that there is a substantial risk it will occur.  Thus, plaintiffs' alleged past injury

cannot support standing to seek an injunction against future harm.  Nor can the request for

forward-looking declaratory relief survive the absence of any live case or controversy.")

Consistent with this precedent, I conclude that the threat of future school-closure mandates is too

speculative to establish standing.  I therefore dismiss Plaintiffs' claims for injunctive and

declaratory relief.

Plaintiffs' claims for nominal damages are, however, a different matter.  As Plaintiffs

point out, the Supreme Court has recently held that "a request for nominal damages satisfies the

redressability element of standing where a plaintiff's claim is based on a completed violation of a

legal right."  *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021).  Because Plaintiffs have

requested nominal damages, *see* ECF No. 1 at ¶ 174, 56 , Plaintiffs have standing to pursue their

claims for nominal damages even though the threat of future harm is speculative.

> **B.     Exhaustion of Administrative Remedies**

Defendants next argue that this Court lacks subject matter jurisdiction because Plaintiffs

have failed to exhaust their administrative remedies.  "It is well-settled that before a party may

bring an action in state or federal court for a violation of the IDEA, that party must first exhaust

administrative remedies under the IDEA." *M.K. v. Sergi*, 554 F. Supp. 2d 201, 218 (D. Conn.

2008).  "A plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court

of subject matter jurisdiction." *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*,

288 F.3d 478, 483 (2d Cir. 2002).  This Circuit has, however, recognized a number of exceptions

to the exhaustion requirement.  Exhaustion is not required when: "(1) it would be futile to use the

due process procedures [required by the IDEA] . . . ; (2) an agency has adopted a policy or

pursued a practice of general applicability that is contrary to the law; [or] (3) it is improbable that

adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer

lacks the authority to grant the relief sought)." *Mrs. W. v. Tirozzi*, 832 F.2d 748, 756 (2d Cir.

1987) (internal quotation marks omitted).

I will first consider whether Plaintiffs have exhausted their IDEA claims or were

otherwise excused from exhaustion.  I will then consider whether Plaintiffs' other claims are

subject to the IDEA's exhaustion requirement.

> **1.     Exhaustion of IDEA Claims**

Plaintiffs do not argue that they have exhausted their administrative remedies under the

IDEA.  ECF No. 46 at 7.  Instead, Plaintiffs argue that they were not required to exhaust their

claims because those claims fall under exceptions to the exhaustion requirement. *Id.* at 7–10.

Specifically, Plaintiffs argue that they seek relief for four distinct systemic violations of the
IDEA, and, according to Plaintiffs, exhaustion of these claims would be futile "because
administrative hearing officers at both levels cannot provide the redress that the Plaintiffs seek."
*Id.* at 7.  These four systemic violations are: (1) failure to provide written notice prior to a change
of placement; (2) failure to abide by the IDEA's stay-put procedural safeguards; (3) failure to
convene IEP meetings after the school closures; and (4) disability-based discrimination.  *Id.* at
10.  "[P]laintiff[s] bear[] the burden of establishing that" the exceptions to the IDEA's
exhaustion requirement are applicable.  *Dervishi ex rel. T.D. v. Mayville*, 3:13-cv-00893, 3 (D.
Conn. Aug. 18, 2015).

To determine whether Plaintiffs' alleged systemic violations excuse the IDEA's
exhaustion requirement, I must determine whether they have been plausibly pled.  *See Cave v. E.
Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) (holding that plaintiffs were
not excused from the exhaustion requirement because they did not "make a plausible argument"
that an exception applied); *Murphy v. Town of Wallingford*, No. 3:10-CV-278, 2011 WL
1106234, at *6 (D. Conn. Mar. 23, 2011) ("Because there is no plausible allegation that the
school's procedures and policies with respect to the IDEA due process hearing are inadequate or
unfair, the Court cannot conclude that it would have been futile for the plaintiffs to exhaust their
administrative remedies.").  I conclude that none of them have been.

> **i.      Alleged Systemic Violations One through Three: Violations of the
> IDEA's Procedural Safeguards**

The first three of the alleged systemic violations are based on the IDEA's procedural
safeguards, namely the prior written notice, stay-put, and IEP meeting requirements.  These
safeguards are triggered only if there is a change or proposed change of a student's "educational
placement."  *See, e.g.*, *J.T. v. de Blasio*, 500 F. Supp. 3d 137, 185–86 (S.D.N.Y. 2020), *aff'd in*

11

*part, appeal dismissed in part sub nom. K.M. v. Adams*, No. 20-4128, 2022 WL 4352040 (2d Cir. Aug. 31, 2022) ("The plain language of the IDEA clearly establishes that the stay-put provision only comes into play when a child's educational placement is changed or proposed to be changed.") (internal quotations and citations omitted); *V.D. v. New York*, 403 F. Supp. 3d 76, 91–92 (E.D.N.Y. 2019) ("[T]he notice and procedural safeguards provisions of the IDEA are violated only if the LEA 'proposes to initiate or change' or 'refuses to initiate or change' some aspect of the child's educational placement . . . .") (quoting 20 U.S.C. § 1415(b)(3)). Because the IDEA's procedural safeguards are predicated on a change or proposed change in educational placement, I must determine whether Plaintiffs have plausibly alleged a change of placement here.

I conclude that they have not: Connecticut's decision to close schools to in-person instruction during the COVID-19 pandemic does not constitute a change in educational placement. In similar factual circumstances, the *J.T.* court reasoned that such closures do not constitute a change in placement for several reasons, two of which apply here. First, system-wide changes that affect all students—abled and disabled alike—do not constitute a change in educational placement. As the court noted, the COVID-19 school-closure "applied to the entire school system and . . . was of general applicability—that is, it applied equally to abled and disabled students." *J.T.*, 500 F. Supp. 3d at 188. "Such an order," the court explained, "does not work a change in pendency." *Id.* Courts across the country, including several considering COVID-19 school closures, have reached similar conclusions. *See N. D. v. State Department of Education*, 600 F.3d 1104, 1116 (9th Cir. 2010) (explaining that "[w]hen Congress enacted the IDEA, Congress did not intend for the IDEA to apply to system wide administrative decisions" and holding that the IDEA's procedural safeguards were not implicated where changes

"affect[ed] all public schools and students, disabled and non-disabled alike" because those changes did not "conflict with Congress's intent of protecting disabled children from being singled out"); *Roe v. Baker*, 624 F. Supp. 3d 52, 58, 60–61 (D. Mass. 2022), *aff'd sub nom. Roe v. Healey*, No. 22-1740, 2023 WL 5199870, at *5 (1ˢᵗ Cir. Aug. 14, 2023) (holding that "the state- and district-wide [COVID-19] school closure decisions do not constitute an actionable change of student placement under the IDEA" in part because disabled students were not "singled out during the pandemic-school closing" and "[a]ccordingly, plaintiffs have not alleged any systemwide violation that could plausibly relax or waive the exhaustion requirement.") (internal quotation marks and alterations omitted); *Carmona v. New Jersey Dep't of Educ.*, No. CV 21-18746, 2022 WL 3646629, at *3–4 (D.N.J. Aug. 23, 2022) (holding that "Plaintiffs have not adequately [pled] that the change from in-person to remote instruction resulting from the COVID-19 pandemic constituted a change in educational placement" because "the plaintiffs were challenging an administrative decision of general applicability that applied equally to abled and disabled students"); *Bills v. Virginia Dep't of Educ.*, 605 F. Supp. 3d 744, 755 (W.D. Va. 2022) (holding that because Virginia's COVID-19 school closure was a "system-wide" decision, "plaintiffs have not pled an exception to the IDEA's exhaustion requirement").  Like other states' COVID-19 school closures, Connecticut's closure applied to all public-school students. Governor Lamont's executive order closing schools explicitly stated that "*all* public school classes will be cancelled for *all* students."  ECF No. 1-10 at 2 (emphasis added).  Because the closure was a system-wide administrative decision that did not single out disabled students, the student-plaintiffs did not experience a change in educational placement that would trigger the IDEA's procedural safeguards.

The second reason identified by the *J.T.* court that COVID-19 closures do not constitute a change in placement is that USDOE, the agency charged with administering the IDEA, issued policy guidance indicating that COVID-19 school closures do not implicate the IDEA's procedural safeguards. *See J.T.*, 500 F. Supp. 3d at 187. In a Supplemental Fact Sheet issued in March 2020 that addressed the risk of COVID-19 to students, USDOE explained its position that "**ensuring compliance with the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitation Act (Section 504), and Title II of the Americans with Disabilities Act should not prevent any school from offering educational programs through distance instruction.**" ECF No. 1-8 at 1 (emphasis in original) (internal footnotes omitted). The Fact Sheet further explained that it is "simply not true" that "federal disability law presents insurmountable barriers to remote education." *Id.* (emphasis in original). Moreover, USDOE issued a Questions and Answers document, in which it explained that "[i]f an LEA closes its schools to slow or stop the spread of COVID-19, and does not provide any educational services to the general student population, then an LEA would not be required to provide services to students with disabilities during that same period of time." ECF No. 1-7 at 2. This guidance clearly expresses USDOE's view that COVID-19 school closures did not implicate the IDEA's procedural safeguards. As the *J.T.* court explained, "[i]t is impossible to square the USDOE's contemporaneous guidance with Plaintiffs' assertion that [the defendants'] switch to remote learning in light of the pandemic constituted a change in placement in and of itself." *J.T.*, 500 F. Supp. 3d at 187–88. Under *Skidmore*, USDOE's guidance is afforded deference to the extent it is persuasive. *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)). In light of the unprecedented challenges posed by the COVID-19 pandemic and the "providential infrequency of pandemics," *Connecticut Citizens*

*Def. League, Inc.*, 6 F.4th at 446, I am persuaded that USDOE's guidance, which gave school districts "flexibility" in determining how to meet the individual needs of students with disabilities during the pandemic, ECF No. 1-8 at 1, warrants deference under *Skidmore*. In reaching this conclusion, I join the *J.T.* court and other courts that have chosen not to "second guess" USDOE's guidance offered during a national emergency. *See J.T.*, 500 F. Supp. 3d at 187–88.; *see also Roe*, 624 F. Supp. 3d at 59 (agreeing with USDOE's guidance and noting that "defendants' decisions to close schools physically and resort to remote education were contemplated and permitted by the USDOE in fulfilling the schools' duty to provide a FAPE"); *Carmona*, 2022 WL 3646629, at *4–5 ("[T]he USDOE, the agency charged with administering the IDEA, issued guidance indicating that the provision of remote services does not work a change in placement . . . ."). For these reasons, I hold that Connecticut's school closures did not work a change in educational placement. And because no change of placement occurred here, the first three of Plaintiffs' alleged systemic violations warranting an exception to the exhaustion requirement fail.

ii.      **Alleged Systemic Violation Four: Discrimination Based on Disability**

Plaintiffs' final alleged systemic violation also fails. Plaintiffs argue that in closing schools during the 2019-2020 school year, Defendants discriminated against students with disabilities in violation of the IDEA. ECF No. 46 at 14. The Second Circuit has held that the IDEA's exhaustion requirement can be excused on futility grounds where plaintiffs allege a "district-wide policy of discrimination." *Cave*, 514 F.3d at 249–50 ("In the past we have excused exhaustion in cases involving systemic violations that could not be remedied by local or state administrative agencies because the framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and volume of

15

complaints were incapable of correction by the administrative hearing process." (internal quotation marks omitted)).  While the Second Circuit has not explained what standard applies to such a discrimination claim, Plaintiffs' conclusory allegations fail to plausibly plead discrimination under *any* standard, whether under the Fourteenth Amendment, the ADA, or the Rehabilitation Act.  Under the constitutional standard, Plaintiffs must "plausibly assert that (1) they were treated differently from other similarly-situated individuals and (2) such selective treatment was based on impermissible considerations . . . ."  *Kajoshaj v. New York City Dep't of Educ.*, 543 F. App'x 11, 15 (2d Cir. 2013).  Because "disability is not a protected class under the Equal Protection Clause of the Fourteenth Amendment," *Gallagher v. Town of Fairfield*, No. 3:10-cv-1270, 2011 WL 3563160, *4 (D. Conn. Aug. 15, 2011) (internal quotation marks omitted), and because "[t]he right to public education is not fundamental," *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 217 (2d Cir. 2012), Plaintiffs must allege facts showing that there was no rational basis for any differential treatment they received.  Under rational basis review, a court must uphold the challenged decision if "there is *any reasonably conceivable state of facts* that could provide a rational basis for the decision."  *Pappas v. Town of Enfield*, 18 F. Supp. 3d 164, 185 (D. Conn. 2014) (internal quotation marks and alterations omitted) (emphasis in original).

Plaintiffs' allegations fail to meet any of these requirements.  Plaintiffs have not alleged any facts that would suggest they were purposefully treated differently than other similarly situated parties.  Plaintiffs "do not contend that FAPE cannot include distance learning," ECF No. 46 at 17; rather they challenge the period from March to June 2020 during which "no type of learning (in-person or virtual) occurred."  ECF No. 46 at 14.  But Plaintiffs do not plead facts suggesting that the types of learning opportunities offered during that timeframe, however

limited they might have been, were materially different between abled and disabled students.

Moreover, the school-closure mandates were rationally related to the government objective of

reducing COVID-19 infections and, ultimately, saving lives.  The Governor's order explained

that COVID-19 "spreads easily from person to person and may result in serious illness or death"

and noted that "to reduce spread of COVID-19, the United States Centers for Disease Control

and Prevention and the Connecticut Department of Public Health recommend implementation of

community mitigation strategies to increase containment of the virus and to slow transmission of

the virus . . . ."  ECF No. 1-10 at 1–2.  School closures were one of many mitigation strategies

meant to reduce infections and promote public health in the state.  Thus, Plaintiffs' claims of

discrimination fail under the Fourteenth Amendment standard.

Plaintiffs' claims also fail under the ADA and Rehabilitation Act discrimination

standards, which are identical.  *See T.J. on Behalf of B.W. v. Bd. of Educ. of Mt. Vernon City Sch.*

*Dist.*, No. 3:17-cv-9592, 2019 WL 13170168, at *13 (S.D.N.Y. Sept. 30, 2019) ("Claims under

Section 504 and Title II [of the ADA] are analyzed identically." (internal quotation marks

omitted)).  The Second Circuit has held that under either the ADA or the Rehabilitation Act, a

plaintiff may base a discrimination claim on a disparate impact theory.  *See Tsombanidis v. W.*

*Haven Fire Dep't*, 352 F.3d 565, 574–75 (2d Cir. 2003).  Plaintiffs here advance such a theory,

arguing that the "cessation of education disproportionately affected Plaintiffs as opposed to non-

disabled children."  ECF No. 46 at 14.  But in cases such as this in which a plaintiff's ADA and

Rehabilitation Act claims are "predicated on the claim that a disabled student was denied access

to a free appropriate education, as compared to the free appropriate education non-disabled

students receive," the plaintiff must also plausibly allege that the defendant acted with "bad faith

or gross misjudgment."  *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 841 (2d Cir.

2014).  Here, Plaintiffs have failed to allege any facts suggesting that Defendants acted in bad faith or with gross misjudgment.  Plaintiffs do not, for example, allege that Defendants actively misled them.  *See T.J.*, 2019 WL 13170168, at *15 ("Other courts considering the bad faith or gross misjudgment standard have found bad faith where the school, for example, actively misled a parent.  In contrast, courts have been reluctant to infer bad faith or gross misjudgment in cases where the claim under the ADA or section 504 simply restates the claim under the IDEA." (internal quotation marks and citations omitted)).  And, as noted, their allegations suggest that Defendants acted in accordance with guidance received from USDOE about lawful ways to deal with the unprecedented challenges presented by a national emergency.  So Plaintiffs' discrimination claims under the ADA and Rehabilitation Act also fail to plausibly allege that the school closures constituted a "district-wide policy of discrimination" against students with disabilities.

Because each of Plaintiffs' alleged systemic violations is implausibly pled, Plaintiffs have not borne their burden of establishing that they were excused from the IDEA's exhaustion requirement.  Thus, I must dismiss Plaintiffs' IDEA claims for failure to exhaust.

### 2.    Exhaustion of Other Claims

The IDEA's exhaustion requirement applies not only to suits alleging violations of the IDEA itself, but also to "civil action[s] under [other] laws seeking relief that is also available under this subchapter."  20 U.S.C. § 1415(*l*).  A plaintiff must exhaust the IDEA's administrative remedies for claims under other laws if those claims seek relief that is available under the IDEA.  *Fry*, 580 U.S. at 165 ("Section 1415(*l*) requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) her suit 'seek[s] relief that is also available' under the IDEA.").  Because "the only relief

the IDEA makes available" is redress for the denial of a FAPE, *id.* at 169 (internal quotation marks omitted), Plaintiffs would be required to exhaust the IDEA's administrative remedies on their claims if those claims seek relief for the denial of a FAPE.  "[I]n determining whether a suit indeed seeks relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint."  *Id.* At 165 (internal quotations marks omitted).  And to determine whether the gravamen of a complaint is the denial of a FAPE, courts consider (1) whether "the plaintiff [could] have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school"; and (2) whether "an *adult* at the school—say, an employee or visitor—[could] have pressed essentially the same grievance."  *Id.* at 171 (emphasis in original).

Here, the answers to those questions are plainly no.  All of Plaintiffs' non-IDEA claims are predicated on a denial of FAPE.  As discussed above, Plaintiffs' allegations under the Fourteenth Amendment, the ADA, and the Rehabilitation Act are all predicated on their claims that Defendants discriminated against students with disabilities by closing schools to in-person instruction and thereby failing to provide them FAPEs.  *See* ECF No. 1 at ¶¶ 208–10, 220–21, 225–30, 239–40; ECF No. 46 at 29–31.  Similarly, Plaintiffs' RICO claims are based on a denial of FAPE because their alleged RICO injury amounts to a "denial of a FAPE as an infraction of their rights under the IDEA."  ECF No. 46 at 37.  And Plaintiffs' state law claims are also predicated on a denial of FAPE because they allege that Defendants failed to comply with Connecticut's laws and regulations implementing IDEA's procedural safeguards, thereby denying Plaintiffs FAPEs.  *See* ECF No. 1 at ¶¶ 241–45.  None of these claims would make sense if the alleged conduct occurred anywhere but a school or if Plaintiffs were employees or visitors of Connecticut schools, rather than students and their parents.  *See J.T.*, 500 F. Supp. 3d

at 193 (holding in a case with nearly identical claims that "[e]very claim is inextricably tied to Plaintiffs' chief accusation that Defendants denied Students a FAPE").  Thus, the gravamen of Plaintiffs' Complaint is a denial of FAPE, and Plaintiffs' non-IDEA claims are therefore subject to the IDEA's exhaustion requirement.  As discussed above, Plaintiffs did not fulfill this requirement, nor were they excused from doing so.  Thus, like their IDEA claims, Plaintiffs' non-IDEA claims must be dismissed for failure to exhaust the IDEA's administrative remedies.

### C.    Eleventh Amendment

Finally, Defendants argue that Plaintiffs' claims are barred by Eleventh Amendment immunity.  The Eleventh Amendment "provides immunity for states against suits in federal court."  *Gibson v. State of Conn. Jud. Dep't*, No. 3:05-CV-01396, 2006 WL 1438486, at *2 (D. Conn. May 23, 2006).  This immunity "extends to suits brought against state officials in their official capacity."  *Reid v. Schuman*, 83 F. App'x 376, 377 (2d Cir. 2003).  As noted, all the claims Plaintiffs assert against the individual Defendants are official capacity claims.  Notwithstanding the Eleventh Amendment, "[a] state may be subject to suit in federal court one of two ways: (1) Congress can divest a state of immunity through statutory enactment, . . . ; or (2) a state may waive its immunity and agree to be sued in federal court."  *Sanchez v. Univ. of Conn. Health Ctr.*, 292 F. Supp.2d 385, 392 (D. Conn. 2003).  A third exception to Eleventh Amendment immunity is the *Ex Parte Young* exception.  Under the *Ex Parte Young* exception, the Eleventh Amendment does not bar claims for prospective relief against state officials for ongoing violations of federal law.  *See Ex Parte Young*, 209 U.S. 123, 150–59 (1908); *see also Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 636 (2002) (holding that the exception applies only to "*ongoing* violations of federal law" (emphasis added)).  This exception applies only to claims for "prospective declaratory or injunctive relief," *Lee v.*

20

*Driscoll*, No. 3:18-CV-01478, 2019 WL 4450679, at *7 (D. Conn. Sept. 17, 2019), and therefore "does not apply to cases in which plaintiff seeks damages," *Credle-Brown v. Connecticut*, 502 F. Supp. 2d 292, 299 (D. Conn. 2007).

As an initial matter, Eleventh Amendment immunity only applies to State Defendants here. The Eleventh Amendment bars claims against State Defendants since they are either state agencies or state officials sued in their official capacities. *See, e.g.*, *Mulero v. State, Dept. of Educ.*, 253 F.R.D. 33, 37–38 (D. Conn. 2008) ("[T]he Eleventh Amendment bars suits against the state, state agencies, and state officers in their official capacity."). District Defendants, however, are not immune to Plaintiffs' claims because the Second Circuit has held that local school boards in Connecticut are not entitled to Eleventh Amendment immunity. *See* note 1, *supra*; *Rosa R. v. Connelly*, 889 F.2d 435, 437–38 (2d Cir. 1989) (explaining that because local school boards "are endowed with broad authority and discretion" and because "any judgments rendered against [local school boards] would come primarily from local funds," they are "not entitled to Eleventh Amendment protection from suit in federal court").

To bring claims against State Defendants, Plaintiffs must demonstrate that one or more exceptions to Eleventh Amendment immunity applies. Plaintiffs argue, and State Defendants concede, that Congress abrogated states' Eleventh Amendment immunity as to IDEA claims for states that accept IDEA-related funds. *See* ECF No. 52 at 8–9. Indeed, 20 U.S.C. § 1403(a) expressly states that "[a] State shall not be immune under the 11th amendment to the Constitution of the United States from suit in Federal court for a violation of this chapter," and USDOE confirmed this conditional abrogation in its letters approving Connecticut's applications for IDEA funds, explaining that "by accepting this grant, your State is expressly agreeing as a condition of IDEA funding to a waiver of Eleventh Amendment immunity," *see* ECF No. 1-16 at

3; ECF No. 1-18 at 3; ECF No. 1-19 at 3.  Therefore, State Defendants are not immune to

Plaintiffs' IDEA claims.  Plaintiffs seem to suggest that this abrogation covers all of their claims,

ECF No. 46 at 23, but Congress's abrogation of claims under IDEA extends only to Plaintiffs'

IDEA claims specifically.  *See Bd. of Educ. of Pawling Ctr. Sch. Dist. V. Schutz*, 290 F.3d 476,

480 (2d Cir. 2002) (holding that abrogation of immunity under the IDEA "extends only to claims

brought *pursuant to* the IDEA, not claims brought pursuant to § 1983 or some other statute"

(emphasis in original)).

Congress has also abrogated states' Eleventh Amendment immunity under § 504 of the

Rehabilitation Act as a condition of receiving federal funds.  42 U.S.C. § 2000d–7(a)(1); *see also*

*Super v. J. D'Amelia & Assocs., LLC*, No. 3:09CV831, 2010 WL 3926887, at *13 (D. Conn.

Sept. 30, 2010) (holding that Connecticut waived its Eleventh Amendment immunity under §

504 of the Rehabilitation Act by continuing to accept federal funds after the Second Circuit's

ruling in *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98 (2d Cir. 2001)).

Therefore, State Defendants are not immune to Plaintiffs' claims under the Rehabilitation Act.

Abrogation does not apply to any of Plaintiffs' other claims, however.  While "Congress

has purported to abrogate the states' sovereign immunity from claims brought against them

under Title II of the ADA," *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 152 (2d

Cir. 2013) (citing 42 U.S.C. § 12202), the validity of this abrogation depends on "whether

Congress acted pursuant to a valid grant of constitutional authority."  *Tennessee v. Lane*, 541

U.S. 509, 517 (2004).  For Title II claims, the Supreme Court has established a three-step process

to determine whether Congress has validly abrogated a state's sovereign immunity:

> [A court must] determine . . ., on a claim-by-claim basis, (1) which aspects of the
> State's alleged conduct violated Title II; (2) to what extent such misconduct also
> violated the Fourteenth Amendment; and (3) insofar as such misconduct violated
> Title II but did not violate the Fourteenth Amendment, whether Congress's

> purported abrogation of sovereign immunity as to that class of conduct is
> nevertheless valid.

*United States v. Georgia*, 546 U.S. 151, 159 (2006).  Based on this process, the Second Circuit

has held that "if a plaintiff cannot state a Title II claim, the court's sovereign immunity inquiry is

at an end."  *Mary Jo C.*, 707 F.3d at 152.  Because I have held that Plaintiffs failed to plausibly

plead discrimination under Title II of the ADA, I find that the Eleventh Amendment bars

Plaintiffs' Title II claims, and I do not reach the next step of the abrogation analysis.  *See Barone*

*v. The Lawyers' Fund for Client Prot.*, No. 22-58, 2023 WL 1975783, at *2 (2d Cir. Feb. 14,

2023) (holding that state defendants' Eleventh Amendment immunity was not abrogated where

plaintiff failed to state a Title II claim).

Regarding Plaintiffs' constitutional claims, "Congress has not waived the states' Eleventh

Amendment immunity from suit under § 1983," through which Plaintiffs bring their Fourteenth

Amendment claims.  *Moran v. Connecticut Dept. of Public Health*, 954 F. Supp. 484, 489 n.6

(D. Conn. 1997).  Similarly, Congress has not abrogated states' immunity to RICO claims.  *See*

*Inkel v. Connecticut*, No. 3:17-cv-1400, 2019 WL 1230358, at *5 (D. Conn. Mar. 15, 2019)

("[T]he RICO statute contains no express abrogation of Eleventh Amendment immunity, 18

U.S.C. § 1964, and courts in this circuit have held that the immunity applies to such claims.").

Apart from abrogation, Plaintiffs also argue that the *Ex Parte Young* exception to

sovereign immunity permits their claims against State Defendants.  ECF No. 46 at 32–33.  But

this exception does not apply to claims for damages.  *See Credle-Brown v*, 502 F. Supp. 2d at

299.  Because nominal damages are, of course, a form of damages, *see Uzuegbunam*, 141 S. Ct.

at 801 (explaining that "[d]espite being small, nominal damages are certainly concrete" and

"nominal damages are in fact damages paid to the plaintiff"), the *Ex Parte Young* exception does

not apply to Plaintiffs' claims for nominal damages.  Further, as previously noted, the exception

applies only in cases where there is an "ongoing violation of federal law." *Verizon Maryland, Inc.*, 535 U.S. at 636.  Nothing in the Complaint suggests there is any ongoing violation of federal law here; Connecticut students are—and have for some time been—back to in-person schooling.  So the *Ex Parte Young* exception does not apply to any of Plaintiffs' claims.[3]

## IV.   CONCLUSION

To summarize, I dismiss all of Plaintiffs' claims for lack of subject matter jurisdiction. Because the threat of future injury is speculative, Plaintiffs lack standing to bring claims for injunctive and declaratory relief.  Plaintiffs also failed to meet the IDEA's exhaustion requirement, a failure that bars all of Plaintiffs' causes of action.  Finally, the Eleventh Amendment bars Plaintiffs' Fourteenth Amendment claim, RICO claim, ADA claim, and state law claims as to State Defendants.  For these reasons, I GRANT Defendants' Joint Motion to Dismiss and DISMISS the Complaint without prejudice, and I DENY as moot the District Defendants' Motion to Dismiss.


IT IS SO ORDERED.


_____
         /s/
         Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
         September 7, 2023


---

[3] Plaintiffs' state law claims are also be barred by the Eleventh Amendment as to State Defendants.  *See Pennhurst State School Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).